Adriane PADILLA, Plaintiff,

v.

Santiago MANLAPAZ a/k/a Sonny Manlapaz; Lilia Reyes a/k/a Lily Reyes; Baguio Corporation a/k/a Baguio Visayas Corporation d/b/a Barrio Fiesta Restaurant a/k/a Barrio Fiesta a/k/a Fiesta Barrio; Visayas Corporation d/b/a Barrio Fiesta Restaurant a/k/a Barrio Fiesta a/k/a Fiesta Barrio; Melpito Corporation a/k/a Melpito Corporation d/b/a Barrio Fiesta Restaurant a/k/a Barrio Fiesta a/k/a Fiesta Barrio, Defendants.

No. 07–CV–4866 (RER).

United States District Court, E.D. New York.

Aug. 4, 2009.

Limor Robinson, Skadden Arps Slate Meagher & Flom LLP, David Andrew Colodny, New York, NY, for Plaintiff.

Lloyd Somer, Law Offices of Lloyd Somer, New York, NY, for Defendants.

## OPINION & ORDER

RAMON E. REYES, JR., United States Magistrate Judge.

■ On November 21, 2007, plaintiff Adriane Padilla ("plaintiff") brought this action against Santiago Manlapaz, Lilia Reyes, Visayas Corporation, Baguio Corporation, and Melpito Corporation (hereinafter individually and collectively referred to as "defendant" or "defendants," respectively) alleging violations of, *inter alia*, various provisions of the New York Labor Laws. (*See* Docket Entry 52 at 6.) On March 16, 2009, plaintiff moved for partial summary judgment on her New York State minimum wage, overtime, spread of hours pay and illegal wage deduction claims.[1] (*See* Docket Entry 52 at 6.) The parties consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636. (*See* Docket Entry 35.) For the reasons set forth below, plaintiff's motion for partial summary judgment is granted in its entirety.

## BACKGROUND

Barrio Fiesta was a Filipino restaurant located in Queens, New York, (Pl.'s and Def.'s Rule 56.1 Statements of Undisputed Material Facts[2] (collectively, "56.1 Stmts.") ¶ 12), that was owned by defendants Manlapaz and Reyes through various corporations that they controlled.[3] (56.1 Stmts. ¶¶ 2–6, 14.) Defendant Manlapaz directly managed the operations of the restaurant, including hiring and firing of staff, determination as to employee compensation, and on-site supervision of operations, while defendant Reyes oversaw the financial aspects of the restaurant. (56.1 Stmts. ¶¶ 96–99.) During the period relevant to this action, the restaurant would open every day for dinner and drinks at approximately 4 p.m. The restaurant

---

1. Defendants' submission in opposition to summary judgment (in affidavit form) does not comply with the requirements set forth in the undersigned's Individual Practice Rules or the Local Rules of this Court. *See* Local Civil Rule 7.1; Ind. Practice Rule III.D.2. However, "[a] district court has broad discretion to determine whether to overlook a failure to comply with local court rules." *Gonzalez v. El Acajutla Restaurant, Inc.*, No. CV 04–1513(JO), 2007 WL 869583, at *3 (E.D.N.Y. Mar. 20, 2007) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir.2001) (citations omitted)). Since the defendants have submitted a response to plaintiff's summary judgment motion, albeit in the incorrect form, I will examine the substance of their arguments.

2. Pursuant to Local Civil Rule 56.1, each numbered paragraph in the plaintiff's 56.1 statement "will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph" in the defendants' 56.1 statement. The standard inference in favor of the non-movant at the summary judgment stage of course applies to any factual disputes that may remain despite these admissions. For the sake of citation brevity, I refer to the 56.1 statements jointly throughout this opinion.

3. While the defendants continue to own the lot and building where Barrio Fiesta once operated, it is currently leased to Ms. Mona Liza de Luca for use as a restaurant. (56.1 Stmts. ¶¶ 16, 18.)

would close at approximately midnight from Sunday through Thursday, and at approximately 4 a.m. on Fridays and Saturdays. (56.1 Stmts. ¶ 39.) The restaurant also served a lunch buffet which ran from approximately 11 a.m. to 4 p.m. on Fridays and Saturdays. (56.1 Stmts. ¶ 40.)

Plaintiff worked at Barrio Fiesta as a waitress from approximately October 2003 until May 2006. (56.1 Stmts. ¶¶ 1, 29.) As a waitress, plaintiff performed standard waitressing duties, such as taking orders and serving food. (56.1 Stmts. ¶¶ 59, 60.) In addition, plaintiff was required to enter information about the restaurant's sales and expenses, and the waitresses' tips, into certain log or recording books. (56.1 Stmts. ¶ 60.) Occasionally, plaintiff was also required to perform incidental responsibilities, such as cleaning up the tables, purchasing supplies for the restaurant, setting up for the weekend buffet offerings, mopping the floors, and cleaning the bathroom and dishes. (56.1 Stmts. ¶¶ 61–65.)

Throughout her employment, plaintiff was paid $3 per hour, and a flat payment of $30 for each buffet shift and private party she worked on the weekends.[4] (56.1 Stmts. ¶ 54.) As part of her compensation, plaintiff received gratuities from a tip-pool, however, plaintiff alleges that defendants never informed her that they would be taking a tip allowance against her wages and that she was unable to retain all of her tips because defendants included non-tipped employees in the tip pool. (56.1 Stmts. ¶¶ 35, 67, 69.) Plaintiff also alleges that she was not paid overtime when she worked over 40 hours in any given week, and that she was not paid spread of hours compensation for any days in which she

worked over 10 hours. Additionally, after plaintiff was issued a summons for serving alcohol to minors, defendant Manlapaz withheld plaintiff's wages from September 2005 to May 2006 to pay for the fines. (56.1 Stmts. ¶¶ 81, 83–84.) During this period, however, plaintiff continued to receive tips and the $30 flat rate for working the buffet shifts. (56.1 Stmts. ¶ 85.) Defendant Manlapaz promised to reinstate plaintiff's wages when her withheld salary totaled $1,500. (56.1 Stmts. ¶¶ 88, 92.) After $3,479.10 of plaintiff's wages were withheld, plaintiff asked defendant Manlapaz when she would begin receiving her wages again, and was told that "the door is open." (56.1 Stmts. ¶¶ 87, 93.) Consequently, plaintiff quit her job at Barrio Fiesta, (56.1 Stmts. ¶¶ 91, 94), and filed this action on November 21, 2007.

## DISCUSSION

### I. Summary Judgment Standard

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden of demonstrating that no material fact exists lies with the party seeking summary judgment. *Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citation omitted). In deciding such a motion, the court must determine whether "after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.,* 221

---

4. It should be noted that plaintiff's 56.1 Statement of Undisputed Material Facts states that plaintiff was paid $30 per hour when she worked the buffet shifts. (56.1 Stmts. ¶ 54.) However, this is clearly a typographical error. That plaintiff was paid $30 per shift is consistent with plaintiff's other allegations of fact (*compare* 56.1 Stmts. ¶ 54 with ¶ 85), and arguments in support of summary judgment. Furthermore, this is the position taken by defendants in their 56.1 statement. (56.1 Stmts. ¶ 54.)

F.3d 394, 398 (2d Cir.2000) (citation omitted). If, however, the opposing party fails to make a showing of an essential element of its case for which it bears the burden of proof, summary judgment will be granted. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

■ To overcome a motion for summary judgment, the opposing party must show that there is an issue of material fact that is in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). That is, the disputed fact must be one which "might affect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. 2505. A fact issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[N]onmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts, and they may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys,* 426 F.3d at 554 (citations and internal quotation marks omitted). If the opposing party does not set forth specific facts showing that there is a genuine issue for trial, summary judgment is appropriate. FED. R. CIV. P. 56(c).

## II. *Analysis*

Plaintiff has moved for partial summary judgment on her New York State minimum wage, overtime, spread of hours pay and illegal wage deduction claims. (*See* Docket Entry 52 at 6.)

### A. *Burden of Proof*

■ Although an employee bringing an action for unpaid wages has the burden of proving that the employee was not properly compensated for the work performed, *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), it is the employer's responsibility to maintain accurate records of an employee's hours. *See* N.Y. COMP. CODES R. & REGS.

tit. 12, § 137–2.1 (2009) ("Every employer shall establish, maintain and preserve for not less than six years weekly payroll records ....."). When an employer's records are inadequate, an employee may meet her burden by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Rivera v. Ndola Pharmacy Corp.,* 497 F.Supp.2d 381, 388 (E.D.N.Y. 2007) (interpreting New York law (quoting *Mt. Clemens Pottery,* 328 U.S. at 687, 66 S.Ct. 1187)). A plaintiff may meet this burden solely through her own recollection. *Id.* (citing *Doo Nam Yang v. ACBL Corp.,* 427 F.Supp.2d 327, 335 (S.D.N.Y. 2005)); *see also Dong v. CCW Fashion, Inc.,* No. 06 CIV. 4973(LAP), 2009 WL 884668, at *3 (S.D.N.Y. Apr. 1, 2009) (citations omitted). The burden then shifts to the employer to prove by a preponderance of the evidence that the plaintiff was properly paid for the hours worked. *See* N.Y. LAB. LAW § 196–a (2009) (providing that where an employer fails "to keep adequate records ... the employer in violation shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements"); *see also Jiao v. Chen,* No. 03 Civ. 0165(DF), 2007 WL 4944767, at *3 (S.D.N.Y. Mar. 30, 2007) (New York law places a more demanding burden on employers than the FLSA); *ACBL Corp.,* 427 F.Supp.2d at 337 n. 15 ("in the absence of adequate records, New York law places the burden on the employer to show [by a preponderance of the evidence that] the employee was properly compensated"). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be approximate." *Chen,* 2007 WL 4944767, at *2 (quoting *Mt. Clemens Pottery,* 328 U.S. at 687–88, 66 S.Ct. 1187).

### B. Plaintiff's Hours and Compensation

Except for the period from November 7, 2005 to May 11, 2006,[5] the Court was not provided with any employment records establishing the precise number of hours worked by plaintiff. Defendants allege that they kept a sales book, tip book, and hours book, (Robinson Affirm, Ex. 2, 107:9–14), but left all of the records on the premises when they leased the restaurant to Ms. de Luca.[6] (Robinson Affirm, Ex. 2, 107:15–21.) Since defendants failed to preserve or present employment records for the other periods of plaintiff's employment, plaintiff can rely on her recollection to establish the number of hours worked for those periods. See, e.g., ACBL Corp., 427 F.Supp.2d at 332 (accepting plaintiff's recollection of hours as sufficient evidence when the defendant claimed that the wage records were lost in an office flood); Chen, 2007 WL 4944767, at *7 (finding plaintiff's recollection of hours satisfied his initial burden under Mt. Clemens Pottery when the defendant failed to provide any records establishing the precise number of hours plaintiff worked); Ke v. Saigon Grill, Inc., 595 F.Supp.2d 240, 250 (S.D.N.Y.2008) (finding the testimony of plaintiff's sufficient to meet the initial burden when the employer deliberately destroyed the employment records).

Since plaintiff's recollection was provided as a range of hours that she worked for each shift, I averaged the hours to establish the approximate time plaintiff worked during each date range.[7] From October 20, 2003 through the end of 2003, plaintiff claims to have worked an average of approximately 39 hours each week: two weekday shifts of approximately 8 hours each (from 4:00 p.m. until sometime between 11:00 p.m. and 1:00), and every Friday and Saturday evening shifts of approximately 11.5 hours (from 4:00 p.m. until sometime between 2:00 a.m. and 5:00 a.m.). (56.1 Stmts. ¶ 72–73.) From January 5, 2004 through the end of 2004, plaintiff claims to have worked an average of 49 hours each week: two weekday shifts, the weekend evening shifts, and the buffet shifts on Saturdays and Sundays (5 hours each). (56.1 Stmts. ¶ 74.) From January 3, 2005 to March 27, 2005, plaintiff claims to have worked an average of 41 hours each week: one weekday shift, the weekend evening shifts, and the buffet shifts. (56.1 Stmts. ¶ 76.) From April 25, 2005 through November 6, 2005, plaintiff claims to have worked an average of 33 hours each week: the weekend evening shifts and the buffet shifts. (56.1 Stmts. ¶ 76.) Based on this recollection, plaintiff has met her burden.[8]

5. Interestingly, these records were provided by plaintiff, and not the defendants. Defendants allege that plaintiff took the records without the permission of the defendants, but concede that the information produced in the records is accurate. (Robinson Affirm, Ex. 4, 152:3–25; 153:2.)

6. Notwithstanding the fact that defendants still own the location, defendant Manlapaz alleges that he cannot access the restaurant because of an eviction problem with the current tenants. (Robinson Affirm, Ex. 2, 109:22–25, 110:1–9.)

7. The Court notes that plaintiff's damages calculation seem to be based on the average of the work schedule set forth in paragraphs 3 through 15 of the Padilla Affidavit in Support of Default Judgment. See Robinson Affirm ¶¶ 19–24. However, the hourly ranges set forth in plaintiff's Local 56.1 statement deviate from the ranges set forth in the default judgment affidavit. (Compare 56.1 Stmts. ¶¶ 72–77 with Padilla Affidavit in Support of Default Judgment ¶¶ 9–16.) Therefore, the Court rejects the ranges set forth in the default affidavit, and consequently, plaintiff's proposed damages calculations.

8. As an alternate basis of decision, I note that plaintiff's hours are not in contention. Plaintiff's recollection was admitted by defendants in their Rule 56.1 Statement. (56.1 Stmts. 72–77.) I also note that, although paragraph 75 was denied by defendants, it does not comply with Rule 56.1(d) which requires each statement to be followed by a citation to admissi-

As discussed above, the burden now shifts to the defendants to provide evidence of the precise amount of work performed. Defendants have not provided the Court with any evidence from which they could meet their burden under New York law.[9] Thus, the Court will use plaintiff's recollection to determine liability and damages. With respect to the period for which employment records were produced, the records indicate that plaintiff worked the weekend evening shifts and the buffet shifts from November 7, 2005 to January 22, 2006. (Robinson Affirm, Ex. 14.) The records further indicate that plaintiff only worked the weekend evening shifts from January 23, 2006 to May 8, 2006. (56.1 Stmts. ¶ 77; Robinson Affirm, Ex. 14.) As for wages, defendants do not dispute that plaintiff was paid $3 per hour, and $30 per shift when she worked the buffet shifts. (56.1 Stmts. ¶ 54.)

### C. *Minimum Wage*

Plaintiff alleges that defendants willfully failed to pay her the minimum wage required under the New York Labor Law. (*See* Docket Entry 52 at 5.) The New York minimum wage during Ms. Padilla's employment at Barrio Fiesta was $5.15 until January 1, 2005; $6.00 on and after January 1, 2005; and $6.75 on and after January 1, 2006. *See* N.Y. COMP. CODES R. & REGS. tit. 12, § 137–1.2; N.Y. LAB. LAW § 652(1).

■■ Plaintiff was compensated at two different rates of pay within the same work week. Where an employee works two different tasks and is paid a different hourly rate of pay for each task, the hourly rate is the average of the rates at which he worked. *See Dove v. Coupe*, 759 F.2d 167, 169 (D.C.Cir.1985) (in determining compliance with the minimum wage laws, average rate of pay for the entire workweek must be considered). Plaintiff was paid an average hourly wage of $3 per hour for the period beginning on October 20, 2003, an average of $3.61 per hour for the period beginning on January 5, 2004, an average of $3.73 per hour for the period beginning on January 3, 2005, and an average of $3.91 per hour for the period beginning on April 25, 2005. For the periods for which the Court was provided with employment records, plaintiff's average hourly wage also fell below the minimum wage (*See* Appendix A). Thus, plaintiff's average hourly wage for her entire employment at Barrio Fiesta fell below the New York minimum wage requirements. This does not end the matter, however, because, under certain circumstances, New York state law allows employers to credit a portion of an employee's tips and the costs of meals as allowances against the minimum wage requirement when certain preconditions are met. N.Y. LAB. LAW § 652(4); N.Y. COMP. CODES R. & REGS. tit. 12, § 137–1.5, 1.9. First, the employer is required to "furnish to each employee a statement

---

ble evidence. Accordingly, it too is deemed admitted.

**9.** Pursuant to the doctrine of *falsus in uno*, defendants claim that certain representations made by plaintiff in her New York State Dep't of Labor complaint should cause the Court to completely discount her credibility. However, as mentioned above, plaintiff's recollection was admitted by defendants. (56.1 Stmts. ¶¶ 72–77.) Moreover, the very facts that defendants claim plaintiff lied about (tip sharing) are not relevant to this decision. Lastly,

New York Law requires an employer who fails "to keep adequate records ... [to *prove*] that the complaining employee was paid wages, benefits and wage supplements." N.Y. LAB. LAW § 196–a (emphasis added). Defendants have submitted no evidence from which a reasonable trier of fact could find that this stringent burden has been met. Thus, utilizing plaintiff's recollection as the basis of liability and damages is also appropriate because defendants have not met their burden.

with every payment of wages listing ... allowances ... claimed as part of the minimum wage ...." N.Y. COMP. CODES R. & REGS. tit. 12, § 137–2.2. Second, the employer must "maintain and preserve for not less than six years weekly payroll records which shall show for each employee ... allowances ... claimed as part of the minimum wage ...." N.Y. COMP. CODES R. & REGS. tit. 12, § 137–2.1. Defendants concede that they failed comply with both requirements, and, therefore, they are not entitled to claim either of the allowances for at least these reasons.[10] (56.1 Stmts. 33.) Accordingly, plaintiff's motion for summary judgment on her minimum wage claim is granted.

### D. Overtime Claims

■ Plaintiff alleges that defendants failed to pay her overtime compensation as required by the New York Labor Law. Under the New York Labor Law, "[a]n employer shall pay an employee for overtime at a wage rate of 1½ times the employee's regular rate for hours worked in excess of 40 hours in one workweek." N.Y. COMP. CODES R. & REGS. tit. 12, § 137–1.3. "Where an employee is unlawfully paid less than the minimum wage, the overtime calculation must be based on the minimum wage to which he was entitled." ' *Chan v. Yue Tung Corp.*, 2007 WL 313483, at *23

(S.D.N.Y. Feb. 1, 2007) (citing *Coa v. Chandara Corp.*, No. 00 Civ. 8057, 2001 WL 34366628, at *6 (S.D.N.Y. July 25, 2001)). Because plaintiff's regular wages for all the applicable periods are below the minimum wage, the plaintiff's "regular rate for purposes of overtime should have been the full minimum wage." *Yue Tung Corp.*, 2007 WL 313483, at *23. Using the ranges of hours average that I discussed above,[11] plaintiff worked 9 hours of overtime per week for the period beginning on January 5, 2004, and 1 hour of overtime per week for the period beginning on January 3, 2005. For the period beginning on October 20, 2003, the range of hours average that I discussed above would not entitle plaintiff to any overtime compensation. However, I find it to be a just and reasonable inference that plaintiff worked the upper range of hours (weekday shifts from 4:00 p.m. until 1:00 a.m., and weekend evening shifts from 4:00 p.m. until 5:00 a.m., or 44 hours) at least once a month. I do not find the same inference is warranted with respect to the period beginning April 25, 2005. Accordingly, plaintiff is entitled to 4 hours of overtime compensation, for every four weeks she worked during that period. *See Mt. Clemens Pottery Co.*, 328 U.S. at 688, 66 S.Ct. 1187 ("the employer cannot be heard to com-

---

**10.** It is worth noting that defendants have also failed to provide any evidence to establish that the "food" provided by the restaurant properly constituted "meals" as the term is defined by the New York Labor Laws. N.Y. COMP CODES R. & REGS. tit. 12, § 137–3.8 (requiring, *inter alia*, that certain types of food be provided). Thus, defendants would be precluded from claiming the food allowance for this reason as well.

**11.** In order to prove that plaintiff never worked overtime, defendants rely on plaintiff's employment records from November 7, 2005 through May 9, 2006. (Robinson Affirm, Ex 14.) These records indicate that plaintiff never worked in excess of forty hours

in any given week during *that period*. However, plaintiff does not claim unpaid overtime for that period. Thus—and setting aside defendants' admissions concerning the number of hours plaintiff worked in their 56.1 Statement—no reasonable jury could find these records sufficient to disprove plaintiff's recollection for a *different period of time*. It follows then, that they have failed to meet their burden under New York Law. *See ACBL Corp.*, 427 F.Supp.2d at 337 n. 15. Incidentally, I find the more reasonable inference to be that plaintiff reduced the number of hours she worked during this latter period because the defendants were (as will be discussed in greater detail below) making illegal deductions from her wages.

plain that the damages lack the exactness and precision of measurement that would be possible had he kept records"). In short, summary judgment is granted on the plaintiff's overtime claims.

### E. *Spread of Hours Compensation*

■ Plaintiff alleges that she was not paid spread of hours compensation for workdays that lasted longer than ten hours. (Docket Entry 52 at 10–11.) Under the New York Labor Law, "[o]n each day in which the spread of hours exceeds 10, an employee shall receive one hour's pay at the basic minimum hourly wage rate before allowances ...." N.Y. COMP. CODES R. & REGS. tit. 12, § 137–1.7. Spread of hours is defined as "the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty." N.Y. COMP. CODES R. & REGS. tit. 12, § 137–3.11. The spread of hours compensation is the "regular minimum wage rather than the lower wage for tipped 'service employers.'" *Saigon Grill, Inc.*, 595 F.Supp.2d at 260 (quoting N.Y. COMP. CODES R. & REGS. tit. 12, § 137–1.7).

■ Defendants concede that they did not pay plaintiff spread of hours compensation for any day that the plaintiff worked over ten hours. (56.1 Stmts. ¶ 79; Manlapaz Aff. ¶ 8.) However, defendants argue that they were not aware of their legal obligation to pay spread of hours compensation. (Manlapaz Aff. ¶ 8.) Ignorance of the law is not a valid defense. Therefore, summary judgment is granted for plaintiff's spread of hours claim.

### F. *Illegal Wage Deduction*

■ Plaintiff lastly claims that defendants withheld her wages from November 2005 to May 2006. Defendants concede that they did not pay plaintiff for eight months, however, they claim that there were "no illegal wage deductions taken from the plaintiff inasmuch as there was an agreement that the plaintiff and the other waitresses were to pay one-half (1/2) of those sums of money incurred by the restaurant as a result of violations issued to the restaurant due to the actions of the waitresses in serving underage patrons." (56.1 Stmts. ¶¶ 83–84, 87; Manlapaz Aff. ¶ 8.) "If any employee is paid by his employer less than the wage to which he is entitled under the provisions of [the Minimum Wage Act], he may recover in a civil action the amount of any such underpayments ... and any agreement between him and his employer to work for less than such wage shall be no defense to such action." N.Y. LAB. LAW § 663(1). Defendants have cited to no provision of the New York Labor Laws authorizing the deduction they claim. *See* N.Y. LAB. LAW § 193 (providing an exclusive list of authorized deductions). In fact, the Labor Laws expressly prohibit deductions of this very type. *See* N.Y. COMP. CODES R. & REGS. tit. 12, § 137–2.5 (providing specific examples of prohibited deductions, such as "fines or penalties for lateness, misconduct"). Moreover, it is settled law that an employee may not waive the protections of the Labor Laws. *See Sexton v. First Financial, Ltd.*, No. 08–CV–04950 (JFB)(ARL), 2009 WL 1706535, at *7 n. 6 (E.D.N.Y. June 16, 2009) ("[T]he Supreme Court has held that employees cannot release their rights under the FLSA by private agreement, because such action contravenes a statutory right granted in the public interest."); (*see also Pachter v. Bernard Hodes Group, Inc.*, No. 03 Civ. 10239(RPP)), 2005 WL 2063838, at *6 (S.D.N.Y. Aug. 25, 2005) (finding "an employee cannot waive the protections of section 193 through an agreement with an employer") (overturned on other grounds). Summary judgment, therefore, is granted for plaintiff's illegal wage deduction claim.

### III. Calculation of Damages

Plaintiff seeks to recover damages under the New York Labor Law for the entire course of her employment at Barrio Fiesta.

### A. Statute of Limitations

Under New York law, "the limitations period for violations of the state's minimum wage and overtime requirements is six years." *Moon v. Kwon*, 248 F.Supp.2d 201, 232 (S.D.N.Y.2002) (citing N.Y. LAB. LAW §§ 198(3), 663(3)). In this case, plaintiff filed her Complaint on November 21, 2007. (*See* Compl. at 1.) According to plaintiff's deposition, she began working at the restaurant in 2003. (Ex. 3 ¶ 37:24–25.) As the entirety of plaintiff's work for the restaurant occurred within the six year statute of limitations, all of plaintiff's claims under New York law are timely.

### B. Minimum Wage, Overtime, and Spread of Hours Damages

Plaintiff is entitled to an award of $12,231.38 in minimum wage damages. For the periods where no records have been provided, plaintiff is entitled to $7,894.27 in lost minimum wage payments.

| Period | Weeks | Hours Worked | Hourly Wages Owed [12] | Damages [13] |
|---|---|---|---|---|
| October 2003 | 11 | 39 | $2.15 | $ 922.35 |
| January 2004 | 52 | 49 | $1.54 | $3,923.92 |
| January 2005 | 12 | 41 | $2.27 | $1,116.84 |
| April 2005 | 28 | 33 | $2.09 | $1,931.16 |
| Total | | | | $7,894.27 |

For the periods where records were provided (November 7, 2005 and January 23, 2006) plaintiff worked 760.50 hours, and is entitled to $4,337.11 in lost minimum wage payments. (*See* Appendix A.)

Plaintiff is also entitled to an award of $1,328.47 for unpaid overtime.

| Period | Weeks | Hours Worked | Hourly Wages Owed [14] | Damages [15] |
|---|---|---|---|---|
| October 2003 | 11 | 1 | $7.73 [16] | $ 85.03 |
| January 2004 | 52 | 9 | $2.58 | $1,207.44 |
| January 2005 | 12 | 1 | $3.00 | $ 36.00 |
| Total | | | | $1,328.47 |

Lastly, plaintiff is entitled to an award of $1,365.60 for spread of hours pay. For every day that plaintiff worked a spread of hours in excess of ten, she is entitled to an additional hour of pay at the minimum wage. I find that plaintiff worked 242 shifts in excess of 10 hours.

| Period | Shifts | Minimum Wage Rate | Damages [17] |
|---|---|---|---|
| October 2003 | 22 | $5.15 | $ 113.00 |
| January 2004 | 104 | $5.15 | $ 535.60 |
| January 2005 | 24 | $6.00 | $ 144.00 |
| April 2005 | 56 | $6.00 | $ 336.00 |
| November 2005 | 8 | $6.00 | $ 48.00 |
| January 2006 | 28 | $6.75 | $ 189.00 |
| Total | | | $1,365.60 |

In sum, plaintiff is entitled to $14,925.45 in total lost wages:

| Violation | Amount |
|---|---|
| Minimum Wage | $12,231.38 |
| Overtime | $ 1,328.47 |
| Spread Of Hours | $ 1,365.60 |
| Total | $14,925.45 |

12. Reached by subtracting plaintiff's average hourly wage from the minimum wage.

13. Reached by multiplying the number of hours worked, by the number of weeks, by the amount of minimum wage owed.

14. Reached by subtracting the minimum wage from the overtime rate.

15. Reached by multiplying the number of overtime hours worked, by the number of weeks, by the amount of overtime owed.

16. Because these hours were not compensated for under the minimum wage calculation, I compensate plaintiff at the full overtime rate.

17. Reached by multiplying the number of shifts, by the minimum wage rate.

## C. *Liquidated Damages*

▮▮▮ Plaintiff alleges that defendants willfully violated the New York Labor Law, and seeks liquidated damages for her minimum wage, overtime and spread of hours claims. Under the New York Labor Law, an employee may be awarded liquidated damages in the amount of 25% of the unpaid wages if the employer's failure to pay the wages was willful. N.Y. Lab. Law § 198(1–a), § 681(1). "A violation of the New York Labor Law is willful ... where the employer 'knowingly, deliberately, [or] voluntarily' disregards its obligation to pay wages." *Ayres v. 127 Restaurant Corp.,* 12 F.Supp.2d 305, 309 (S.D.N.Y.1998) (quoting *P & L Group, Inc. v. Garfinkel,* 150 A.D.2d 663, 541 N.Y.S.2d 535 (2d Dep't 1989)); *see also Saigon Grill,* 595 F.Supp.2d at 261 (defining wilfulness as knowledge by the employer that his conduct is illegal or reckless disregard for whether it is statutorily prohibited).[18] The plaintiff need not show malice or bad faith to establish willfulness. *Ayres,* 12 F.Supp.2d at 309 (citing *In re CIS Corp.,* 206 B.R. 680, 689 (Bankr.S.D.N.Y.1997)).

▮▮▮ The Court agrees with plaintiff that defendants' violations were willful. At a minimum, defendants showed no regard whatsoever for legal requirements in connection with their wage policies and had ample reason to know that they were failing to pay legally mandated wages to their employees. It is clear from the record that the defendants had knowledge of the existence of their minimum wage and overtime responsibilities. *See, e.g.,* (Robinson Affirm, Ex. 2, 115:7–17) (defendant Manlapaz testified that he offered plaintiff the option of getting paid the minimum wage if she filed her own taxes or $3 per hour if they filed taxes on her behalf); (Robinson Affirm, Ex. 2, 115:23–25; 116:1–

5) (defendant Manlapaz testified that the plaintiff did not work in excess of 40 hours per week at any time during her employment, and that he intentionally limited the employees' work schedules to 40 hours a week). Nevertheless, defendants have provided no evidence suggesting that they made a good faith effort to comply with those requirements. More specifically, with respect to minimum wage requirements, defendants have claimed a tip credit and meal allowance, yet they concede that they never provided plaintiff with a payment stub setting forth those allowances. Additionally, although plaintiff routinely worked in excess of forty hours a week, she was never paid the proper overtime rate. Defendants have not argued that these failures were due to any inadvertence on their part, or that they reasonably considered their actions to be lawful. With respect to the illegal withholding claim, the defendants have not provided evidence that they made any reasonable inquiries into the propriety of withholding plaintiff's wages for eight months. Nor have defendants alleged that they investigated their obligations with respect to the spread of hours requirements. All of the foregoing, considered as a whole, demonstrates not a good faith effort to comply with the New York Labor Laws, but instead a complete disregard for them. *See Consolidated Masonry Contractors, Inc. v. Angello,* 2 A.D.3d 997, 770 N.Y.S.2d 134, 136 (2003) ("A finding of willfulness is warranted if substantial evidence tend[s] to demonstrate that petitioner knew or should have known that it was violating the law."); *Yue Tung Corp.,* 2007 WL 313483, at *28–29 (finding defendants liable for liquidated damages when they failed to show that they made an effort to determine whether they were entitled to

---

**18.** The test for willfulness in the context of liquidated damages under the New York Labor Law "parallels that employed in determining willfulness for limitation purposes under the FLSA." *Saigon Grill,* 595 F.Supp.2d at 261 (citing *Moon,* 248 F.Supp.2d at 235).

retain a portion of plaintiff's tips, or to claim a tip allowance to meet their federal and state minimum wage obligations); *see also, Ayres*, 12 F.Supp.2d at 309 (finding defendants liable for liquidated damages because they intentionally, or at least recklessly, permitted a salaried employee to share in the wait staff's gratuities).

On these facts, there can be no conclusion other than the defendants acted willfully. *See Wolfslayer v. IKON Office Solutions, Inc.*, No. 03–6709, 2004 WL 2536833, at *10 (E.D.Pa. Nov. 8, 2004) ("The determination of whether a FLSA violation was willful is a question of law on which the plaintiff bears the burden of proof."). Therefore, summary judgment is granted, and plaintiff is entitled to liquidated damages of $3,731.36, representing 25% percent of the total wages owed ($14,-925.45).

### D. *Prejudgment Interest on Minimum Wage, Overtime, Spread of Hours*

 Plaintiff also seeks prejudgment interest pursuant to N.Y. C.P.L.R. § 5001 for her New York Labor Law minimum wage, overtime, and spread of hours claims. New York law provides for the reimbursement of prejudgment interest earned on withheld wages. *Cesario v. BNI Constr., Inc.*, 07 Civ. 8545(LLS) (GWG), 2008 WL 5210209, at *6 (S.D.N.Y. Dec. 15, 2008). The statutory interest rate in New York is nine percent. N.Y. C.P.L.R. § 5004. "Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable interme-

diate date." N.Y. C.P.L.R. § 5001(b); *see Cesario*, 2008 WL 5210209, at *6.

Plaintiff's counsel recommends using January 31, 2005 as the midpoint of plaintiff's employment with Barrio Fiesta. The Court accepts this methodology, and finds that plaintiff is entitled to $6,057.69 (((.09 X $14,925.45) / 365) X 1646 days) interest on her lost wages. *Liu v. Jen Chu Fashion Corp.*, No. 00 Civ.4221 RJH AJP, 2004 WL 33412, at *5 (S.D.N.Y. Jan. 7, 2004).

### IV. *Joint and Several Liability of Defendants Manlapaz and Reyes*

Plaintiff argues that defendants Manlapaz and Reyes are "employers," and are therefore individually liable for all of plaintiff's lost wages.[19] (*See* Docket Entry 52 at 6.) Defendants argue that plaintiff's sole employer was Visayas Corporation. (Manlapaz Aff. ¶ 10.) To be liable under the New York Labor Laws, one must be an "employer," which the statute broadly defines as encompassing any "person employing any [employee]." N.Y. LAB. LAW § 2(6); *see also* N.Y. LAB. LAW § 651(6); *Hernandez v. La Cazuela de Mari Restaurant, Inc.*, 538 F.Supp.2d 528, 534 (E.D.N.Y.2007). *See also, Chen*, 2007 WL 4944767, at *9, n. 12 (there is general support for giving FLSA and the New York Labor Law consistent interpretations, and courts have interpreted the definition of "employer" under the New York Labor Law coextensively with the definition used by the FLSA) (citations omitted).

 The Second Circuit uses an "economic reality" test to determine whether a defendant is an employer under

---

**19.** Paragraph eleven of plaintiff's complaint alleges that, at all times relevant to this action, defendants were employers within the meaning of the applicable New York Labor Laws. (Compl. ¶ 11.) Defendants failed to deny (or even address) this allegation in their answer. (Docket Entry 32.) Consequently,

and pursuant to Federal Rule of Civil Procedure 8(b)(6), it is deemed admitted. Thus, summary judgment is warranted on this issue for at least this reason. Nevertheless, for the sake of completeness, and as an alternate basis of decision, I address it.

both federal and state law. *See Jiao*, 2007 WL 4944767, at \*9. Under the economic reality test, the court looks at four factors: "whether the defendant (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (quoting *Carter v. Dutchess Comm'y Coll.*, 735 F.2d 8, 12 (2d Cir.1984)). However, these factors are not exclusive. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir.1999). Instead, courts look at the totality of the circumstances in determining whether the defendant is an employer. *See Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71 (2d Cir.2003) (citing *Antenor v. D & S Farms*, 88 F.3d 925, 937–38 (11th Cir.1996)).

■ Because the facts relevant to this issue are not in dispute, and because whether defendants constituted "employers" under New York Labor Law is a question of law, this issue is ripe for decision. *Cf. Prince v. MND Hospitality, Inc.*, 2009 WL 2170042, at \*5 (S.D.Tex. July 20, 2009). Defendant Manlapaz stated in his deposition that he controlled all aspects of the restaurant including the hiring and training of staff, the conditions of employment, scheduling, wages, and the method of payment. (56.1 Stmts. ¶¶ 97–100); (Robinson Affirm, Ex. 2, 11.18–25; 12.19–25; 13.1–5; 126.2–25.) On these facts, Manlapaz was clearly an "employer" under the New York Labor Law. Accordingly, plaintiff's motion for summary judgment is granted in this regard.

■ In determining whether Reyes constitutes an employer, the overarching concern is whether she possessed the power to control the workers in question. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir.1999) (quoting *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961)). Since

economic reality is determined based upon all the circumstances, any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) (whether an employer-employee relationship exists does not depend on isolated factors but rather "upon the circumstances of the whole activity"). "Yet, such status does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees." *Herman*, 172 F.3d at 139. Instead, "[c]ontrol may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control 'do not diminish the significance of its existence.'" *Id.* (quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir.1982)).

■ Reyes was co-owner of Barrio Fiesta. (56.1 Stmts. 14.) Her testimony indicates that she would make repeated visits to Barrio Fiesta after working her nursing shifts during the week, and that her presence on the weekends was even more frequent. (Robinson Affirm, Ex. 4, 12:8–19.) Specific examples of Reyes' involvement in Barrio Fiesta's operations include: maintaining and overseeing Barrio's tax filings and other financial matters (56.1 Stmts. ¶ 101), reviewing the waitresses' work schedules (56.1 Stmts. ¶ 102), setting up for the weekend buffet shifts (Robinson Affirm, Ex. 4, 12:8–19), cleaning the premises (*Id.*), purchasing supplies (*Id.*), assisting Manlapaz during marketing (Robinson Affirm, Ex. 4, 11:2–6), and training and supervising new waitresses (including plaintiff) as to the credit card machine (*Id.*) and the method of properly account for their daily summaries (e.g., summaries relating to tips, daily sales and expenses)

(56.1 Stmts. ¶ 104). Considering the totality of Reyes' involvement in the operations of Barrio Fiesta, and repeated supervision of Barrio's employees, I find that Reyes yielded the type of control over Barrio's employees that is typically found in the employee/employer relationship. *See Ansoumana v. Gristede's Operating Corp.,* 255 F.Supp.2d 184, 188 (S.D.N.Y.2003) ("The terms are to be expansively defined, with 'striking breadth,' in such a way as to 'stretch ... the meaning of employee to cover some parties who might not qualify as such under a strict application of traditional agency law principles.'") (citations omitted). Accordingly, summary judgment is granted on with respect to Reyes as well.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment is granted in its entirety, and plaintiff is awarded a total of $24,714.50 (comprising $14,925.45 in lost wages, $3,731.36 in liquidated damages and $6,057.69 in interest).

## APPENDIX A

### Plaintiff's Unpaid Minimum Wage With Buffet Shift Pay (for periods 11/7/05–1/22/06) [20]

| Date | Total Hours | Total Comp | Avg Comp | Lost Wage | Total Owed |
|---|---|---|---|---|---|
| 11/7–11/13 | 30 | $60 | $2 | $4 | $ 120 |
| 11/14–11/20 | 26 | $30 | $1.15 | $4.85 | $ 126.10 |
| 11/21–11/27 | 30 | $60 | $2 | $4 | $ 120 |
| 11/28–12/5 | 31 | $60 | $1.94 | $4.06 | $ 125.86 |
| 12/5–12/11 | 29 | $60 | $2.07 | $3.93 | $ 113.97 |
| 12/12–12/18 | 31.5 | $60 | $1.90 | $4.1 | $ 129.15 |
| 12/19–12/25 | 22.5 | $60 | $2.67 | $3.33 | $ 74.93 |
| 12/26–1/1 | 31 | $60 | $1.97 | $4.03 | $ 124.93 |
| 1/2–1/8 | 26 | $60 | $2.31 | $4.44 | $ 115.44 |
| 1/9–1/15 | 28.75 | $60 | $2.09 | $4.66 | $ 133.98 |
| 1/16–1/22 | 31.5 | $60 | $1.90 | $4.85 | $ 152.78 |
| Total | 317 | | | | $1,337.14 |

### Plaintiff's Unpaid Minimum Wage Without Buffet Shift Pay (for periods 1/23/06–5/7/06)

| Date | Total Hours | Total Comp | Avg Comp | Lost Wage | Total Owed |
|---|---|---|---|---|---|
| 01/23/06–01/29/06 | 36 | 0 | 0 | $6.75 | $ 243 |
| 01/30/06–02/05/06 | 33.25 | 0 | 0 | $6.75 | $ 224.44 |
| 02/06/06–02/12/06 | 32 | 0 | 0 | $6.75 | $ 216 |
| 02/13/06–02/19/06 | 19.5 | 0 | 0 | $6.75 | $ 131.63 |
| 02/20/06–02/26/06 | 33 | 0 | 0 | $6.75 | $ 222.75 |
| 02/27/06–03/05/06 | 33 | 0 | 0 | $6.75 | $ 222.75 |
| 03/06/06–03/12/06 | 33 | 0 | 0 | $6.75 | $ 222.75 |
| 03/13/06–03/19/06 | 35 | 0 | 0 | $6.75 | $ 236.25 |
| 03/20/06–02/26/06 | 33.5 | 0 | 0 | $6.75 | $ 226.13 |
| 03/27/06–04/02/06 | 20.5 | 0 | 0 | $6.75 | $ 138.38 |
| 04/03/06–04/09/06 | 32.5 | 0 | 0 | $6.75 | $ 219.38 |
| 04/10/06–04/16/06 | 15 | 0 | 0 | $6.75 | $ 101.25 |
| 04/17/06–04/23/06 | 25.5 | 0 | 0 | $6.75 | $ 172.13 |
| 04/24/06–04/30/06 | 35 | 0 | 0 | $6.75 | $ 236.25 |
| 05/01/06–05/07/06 | 26.5 | 0 | 0 | $6.75 | $ 178.88 |

**20.** For the period 11/14–11/20, it appears that there was only 1 buffet shift offered that week. (Robinson Affirm, Ex. 14.) Additionally, for the period 11/21–11/27, it appears that plaintiff worked 6 hours for the Saturday buffet shift, however, since the 56.1 statements state that the buffet shifts lasted 5 hours each, the court will calculate it as such.