**Ashley HICKS, et al., Plaintiffs,**

**v.**

**T.L. CANNON CORP.,
et al., Defendants.**

**No. 13–CV–6455 EAW.**

United States District Court,
W.D. New York.

Signed Aug. 5, 2014.

Frank S. Gattuso, O'Hara O'Connell & Ciotoli, Fayetteville, NY, J. Nelson Thomas, Michael J. Lingle, Thomas & Solomon LLP, Jared K. Cook, Thomas, Solomon Law Firm, Rochester, NY, for Ashley Hicks.

Craig R. Benson, Elena Paraskevas–Thadani, Littler Mendelson, P.C., New York, NY, Erin W. Smith, Littler Mendelson, P.C., Rochester, NY, for T.L. Cannon Corp.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

### INTRODUCTION

Plaintiffs bring this action alleging violations of the New York Minimum Wage Act, New York Labor Law ("NYLL") §§ 650 *et seq.,* and violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.,* for Defendants' alleged failure to pay minimum wages to Plaintiffs. (Dkt. 82). The case centers on the compensation that must be paid to tipped employees in the food service industry, and the conditions under which an employer may take a credit for the tips paid to those employees. Currently before the Court are Plaintiffs' motion for partial summary judgment (Dkt. 144), Defendants' cross-motion for partial summary judgment (Dkt. 176), and Plaintiffs' motion for class certification pursuant to Fed.R.Civ.P. 23 (Dkt. 143). For the following reasons, Plaintiffs' motion for partial summary judgment is granted in part and denied in part, Defendants' cross-motion for partial summary judgment is denied, and Plaintiffs' motion for class certification is granted.

### FACTUAL BACKGROUND

Defendants are responsible for the operation of Applebee's restaurants in Connecticut and New York. Defendant TLC West, LLC employs the store managers and servers for New York restaurants in Buffalo, Rochester, Syracuse, and the Finger Lakes. (Dkt. 146–2 at 16:12–13). Defendant TLC Central, LLC employs the store managers and servers for New York restaurants in the Hudson Valley, the Mohawk Valley, Albany, and the Southern Tier. (*Id.* at 16:14–15). Defendant TLC Utica, LLC employs the store managers and servers for the Utica, New York, restaurant. (*Id.* at 15:22–25). Defendant TLC North, LLC has no employees. (*Id.* at 16:16–22). These business entities, along with Defendants T.L. Cannon Corp. and T.L. Cannon Management Corp., will be collectively referred to as "T.L. Cannon."

Defendant Matthew J. Fairbairn is the owner of T.L. Cannon, Defendant John A. Perry is President of T.L. Cannon, and Defendant David A. Stein is a partner in T.L. Cannon. (*Id.* at 23:10–14, 28:22–25).

Named Plaintiff Ashley Hicks was employed by Defendant TLC West, LLC at an Applebee's restaurant in Henrietta, New York, from December 20, 2005, through August 24, 2007, and in Irondequoit, New York, from June 23, 2008, through December 19, 2010. (Dkt. 176–6 at ¶ 2). Named Plaintiff Kristin Raymond was employed by Defendant TLC West, LLC at the Applebee's restaurant in Gates, New York, from February 25, 2002, to December 11, 2011. (Id. at ¶ 3). Barbara Kubiak, Raegan Johnson, Barbara Soluri, Lilian Mullen, Heidi Prentice, Amber Dewey, and Shanice Ford (collectively the "Moving Opt–In Plaintiffs") have consented to become party plaintiffs to this litigation. (Dkt. 18, 19, 20, 23). The record does not contain information regarding the Moving Opt–In Plaintiffs' dates or locations of employment.

During the course of their employment with Defendants, Ms. Hicks and Ms. Raymond were, when working in tipped occupations, paid the lower cash wage applicable to food service workers pursuant to NYLL § 652(4). (Dkt. 176–7, 176–8). The NYLL regulations in effect prior to January 1, 2011, permitted an employer to take a tip credit and pay a lower hourly rate than the minimum wage if certain requirements were met, including furnishing the employee a pay statement with each payment of wages that showed, among other things, the "allowances, if any, claimed as part of the minimum wage...." 12 N.Y.C.R.R. § 137–2.2 (repealed).

Ms. Hicks and Ms. Raymond received pay statements that did not expressly set forth a category listing the amount of any allowance claimed for tips as part of the minimum wage, but did list:

- Employer name and address;
- Employee name and address;
- Pay period;
- Regular rate for each position worked;
- Overtime rate for each position worked;
- Hours worked at each rate of pay;
- Tips earned;
- Spread of hours pay;
- Tip makeup pay;
- Deductions;
- Withholdings;
- Gross earnings; and
- Net earnings.

(Dkt. 176–6 at ¶ 7).

On December 15, 2010, the New York State Department of Labor (the "Department of Labor") issued a consolidated Wage Order for the Hospitality Industry ("the Wage Order") (12 N.Y.C.R.R. Part 146) that became effective on January 1, 2011. The Wage Order requires employers to provide certain written notices to employees upon hire and prior to any change in the employee's hourly rate of pay. 12 N.Y.C.R.R. § 146–2.2. Among other things, the notice must set forth "the amount of tip credit, if any, to be taken from the basic minimum hourly rate" and it must "also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." Id. On January 1, 2011, Ms. Raymond's hourly rate of pay for tipped occupations was raised to $5.00 per hour from $4.65 per hour. (Dkt. 176–8 at 25; Dkt. 176–10 at 13). On that same day, Ms. Raymond received a "Pay Rate Notice" that listed her position, rate of pay, rate of overtime pay, and regular pay day, but did not state that her employer intended to take a tip credit, the amount of the tip credit, or that she was entitled to makeup pay if she did not earn enough in tips. (Dkt. 176–10 at 13).

For purposes of Plaintiffs' motions for partial summary judgment and class certification, the parties have entered into certain stipulations. (Dkt. 176–5).[1] In particular, the parties have stipulated that from September 24, 2006, to the present: Plaintiffs understood that they were being paid the tipped minimum wage for hours that they worked in tipped occupations and had actual knowledge that Defendants were taking tip credits from the minimum wage; Defendants had a policy to provide their employees with verbal notice at orientation that Defendants would take a tip credit and that Defendants had a policy to pay its tipped employees extra pay if their tips were insufficient to bring the employee up to the basic minimum hourly rate for the week; Plaintiffs were not confused by Defendants' wage notices and pay stubs nor did they fail to understand the amounts they were being paid; in the instances where Plaintiffs did not earn enough in tips to bring their pay to the minimum wage, Defendants made up the difference in accordance with their tip makeup pay policy; and, when combining the tipped minimum wage that they received, the tips that they earned, and any tip makeup pay provided, Plaintiffs never earned less than minimum wage. (Dkt. 176–5 at 3–4).

### PROCEDURAL HISTORY

Plaintiffs filed their complaint on September 14, 2012. (Dkt. 1). Plaintiffs bring their FLSA claim as a collective action under Section 16(b) of the FLSA. (*Id.*). With leave of Court, Plaintiffs filed an amended complaint on April 10, 2013,

and an answer to the amended complaint was filed on May 24, 2013. (Dkt. 82, 90).

Defendants filed a motion to change venue on October 9, 2012, which Plaintiffs opposed. (Dkt. 24, 50, 51). On June 4, 2013, United States District Judge Michael A. Telesca granted Defendants' motion to change venue (Dkt. 93), and the case was transferred to the Northern District of New York. (Dkt. 94). On June 18, 2013, Plaintiffs filed a motion seeking to have the action transferred back to the Western District of New York (Dkt. 95), and on August 23, 2013, Plaintiffs' motion was granted and the case was transferred back to this District. (Dkt. 117).

Plaintiffs filed a motion for approval of the collective action on October 18, 2013, and Defendants filed a cross-motion for approval of their proposed collective action notice on November 15, 2013. (Dkt. 128, 134). On December 10, 2013, the Court entered an order instructing the parties to confer and submit a jointly-approved proposed notice of collective action. (Dkt. 139). The Court granted the final proposed notice of collective action on December 20, 2013. (Dkt. 141).

On January 27, 2014, Plaintiffs filed the instant motion for partial summary judgment as to the Named Plaintiffs Ashley Hicks and Kristin Raymond, and the Moving Opt–In Plaintiffs. (Dkt. 144). In support of their motion for partial summary judgment, Plaintiffs contend that Defendants violated the minimum wage provisions of the NYLL by improperly taking a tip credit against their wages without following the regulatory requirements associ-

---

**1.** Plaintiffs maintain, and the Court agrees, that the stipulation does not apply to Docket 176—Defendants' cross-motion for partial summary judgment. The plain language of the stipulation makes it clear that Plaintiffs "cannot oppose these asserted facts *for purposes of these motions (Docket Nos. 143 and 144)....*" (Dkt. 176–5 at 2) (emphasis added).

The stipulation does not prohibit Plaintiffs from opposing the asserted facts in opposition to Docket 176, and in fact specifically notes that Plaintiffs "may ... inform the Court that they do not believe that discovery will ultimately reveal these asserted facts to be true...." (*Id.* at 3).

ated with the allowable use of such a tip credit. (*Id).* Plaintiffs make two arguments in support of their position. First, they argue that Defendants did not comply with the regulatory requirements related to information that must be provided on a pay stub where the employer takes a tip credit. Second, they argue that after January 1, 2011, Defendants failed to comply with the provisions of the Wage Order requiring them to provide written notice to employees before taking a tip credit. Defendants cross-moved for partial summary judgment on March 14, 2014, arguing that they complied in all respects with the NYLL and its associated regulations. (Dkt. 176). Plaintiffs filed a response to Defendants' motion on April 3, 2014, and Defendants filed a reply on April 17, 2014. (Dkt. 191, 197). Plaintiffs also filed a motion to certify the class on January 27, 2014. (Dkt. 143). Defendants filed a response to the class certification motion on March 13, 2014, and Plaintiffs filed a reply on April 3, 2014. (Dkt.177, 192). Oral argument on the instant motions was held on May 13, 2014. (Dkt. 201).

As set forth below, Plaintiffs' motion for partial summary judgment is granted in part and denied in part. Specifically, Plaintiffs' motion is granted as to Ms. Raymond's claim that Defendant TLC West, LLC failed to comply with the Wage Order effective January 1, 2011. Plaintiffs' motion for partial summary judgment is denied in all other respects. Furthermore, Defendants' cross-motion for partial summary judgment is denied, and Plaintiffs' motion to certify the class pursuant to ·Fed.R.Civ.P. 23 is granted.

### DISCUSSION

### I. The Motions for Partial Summary Judgment

#### A. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judg-ment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial:* ' " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.,* 475 U.S. at 586–87, 106 S.Ct. 1348) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion. for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

#### B. Status of the FLSA Opt–In Plaintiffs

██ As a threshold matter, the Court must consider whether the Moving Opt–In Plaintiffs have standing to seek summary judgment as to the New York state law claims. Defendants maintain that the Moving Opt–In Plaintiffs are not parties to the state law claims set forth in the amended complaint. (Dkt. 178 at 16). In support of this argument, Defendants contend that there is no mechanism by which

FLSA opt-in plaintiffs may join state law claims and that the consents signed by the Moving Opt-In Plaintiffs only reference the FLSA claims. (Dkt. 197 at 7). The consents state, in relevant part, as follows:

> I consent to become a "party plaintiff," named, or a representative plaintiff in any Fair Labor Standards Act action of unpaid wages, including overtime wages and/or tip credit violations, and related relief against my employer(s), including T.L. Cannon Corp. d/b/a Applebee's. . . .

> I wish to preserve and pursue any claim that I may have to the greatest extent possible. Therefore, I expressly consent to the use of this consent form for purposes of making me a party plaintiff in any lawsuit and/or lawsuits that plaintiffs' attorneys have brought and/or may bring on behalf of myself and other employees alleged to be similarly situated.

(Dkt. 18, 19, 20, 23).

Plaintiffs counter that the express terms of the FLSA provide that when a party opts in to a litigation, she becomes a "party plaintiff" to the "action" (29 U.S.C. § 216(b)) and that this necessarily means that she is a plaintiff as to all claims. As such, Plaintiffs argue, the Moving Opt-In Plaintiffs are free to seek relief on the NYLL claims as well as the FLSA claims.

Defendants cite two cases standing for the proposition that Ms. Hicks and Ms. Raymond cannot file a summary judgment motion 6n behalf of the class before the class is certified. (Dkt. 178 at 16). These cases are not on point as Plaintiffs are not seeking summary judgment on behalf of the class.

Plaintiffs cite three cases that they claim demonstrate that the Moving Opt-In Plaintiffs should be considered plaintiffs with respect to the NYLL claims. In *Prickett v. DeKalb County,* 349 F.3d 1294 (11th Cir.2003), relied on by Plaintiffs, the court considered whether opt-in plaintiffs had to submit additional consent forms when additional FLSA claims were added to the complaint. The court held that they did not, explaining:

> We are bound by the intent of Congress, as expressed in the language of the statute. The statute says, "[n]o employee shall be a party plaintiff to any such *action* unless he gives his consent in writing to become such a party. . . ." 29 U.S.C. § 216(b) (emphasis added). That plain language indicates that plaintiffs do not opt-in or consent to join an action as to specific claims, but as to the action as a whole. The statute does not indicate that opt-in plaintiffs have a lesser status than named plaintiffs insofar as additional claims are concerned. To the contrary, by referring to them as "party plaintiff[s]" Congress indicated that opt-in plaintiffs should have the same status in relation to the claims of the lawsuit as do the named plaintiffs.

349 F.3d at 1297.[2] The *Prickett* court also relied on the language of the consent forms themselves, holding that "the language of the consent forms that the opt-in plaintiffs signed in this case indicates that they consented to have the named plaintiffs adjudicate all of their claims for overtime compensation under FLSA, not merely the claims then specified in the complaint." *Id.*

In a later case, the Eleventh Circuit Court of Appeals explained that "the lesson from *Prickett* is that we must interpret consent forms according to the plain mean-

---

**2.** The Second Circuit Court of Appeals had the opportunity to consider whether to adopt the holding in *Prickett* in *Kuebel v. Black & Decker Inc.,* 643 F.3d 352 (2d Cir.2011) but declined to reach the issue. *Id.* at 365 n. 7 (noting that "[a]s this case proceeds, the district court may well have the occasion to consider this subject in the first instance.").

ing of their language." *Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1018 (11th Cir. 2007). In *Albritton*, plaintiff's argued that they were entitled to commence a second FLSA action on behalf of plaintiffs who had opted in to an earlier action. The court rejected this argument because the consent forms at issue "used narrow language in describing the litigation that they authorized." *Id.*

Plaintiffs also cite *Fengler v. Crouse Health System, Inc.*, 634 F.Supp.2d 257 (N.D.N.Y.2009). In *Fengler*, there were two FLSA claims—first, that employees were required to work through meal breaks, and second, that employees were required to work overtime without compensation. *Id.* at 259. On plaintiffs' motion for certification as a collective action, the magistrate judge limited opt-in plaintiffs' claims to "those for time worked during unpaid meal breaks." *Id.* at 262. On review, the district judge held that this was clear error because "[the] statutory language [of the FLSA] indicates that once a potential plaintiff opts in, that person is a party to the *action*, not just to a *claim*." *Id.* (emphasis in original). *Fengler*, like *Prickett*, involved only FLSA claims.

Finally, Plaintiffs cite *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y.2001). There, plaintiffs brought both FLSA and NYLL claims; there were approximately 350 opt-in plaintiffs. *Id.* at 83. Plaintiffs filed a motion to certify their state law claims as a class action. In deciding this motion, the court considered whether it should exercise supplemental jurisdiction over the state law claims, and concluded that it should. With respect to the opt-in plaintiffs, the court held:

> The same considerations of sound jurisdictional efficiency and economy should apply to the delivery workers who filed consents to be party-plaintiffs to the FLSA claims. Section 216(b) gives

them the status of parties and, as parties, they should have the same rights as the named Plaintiffs to have all their related claims adjudicated in the same forum. Plaintiffs properly chose a federal forum to vindicate their federal rights to be paid a minimum wage and overtime premium pay. Their suit will not be undermined or compromised by including their related claims under New York's Minimum Wage Act.

*Id.* at 90. *Ansoumana* is nearly on point—it involved both FLSA and state law claims, and the court held that it had supplemental jurisdiction over the opt-in plaintiffs' state law claims in the same way it had supplemental jurisdiction over the named plaintiffs' state law claims. The *Ansoumana* court did not directly address whether the consent forms in that case covered the state law claims.

The Court has found only one case arguably supporting Defendants' position. In *Bradford v. CVS Pharmacy, Inc.*, No. 1:12–CV–1159–TWT, 2013 WL 5587350 (N.D.Ga. Oct. 10, 2013), the court expressly considered "whether a collective action can ever encompass non-FLSA claims" and concluded that the collective action could not include a declaratory judgment claim and that therefore "the opt-in plaintiffs that allegedly signed separation agreements cannot confer standing for the declaratory judgment claim because they opted in to a collective action that only encompassed the unpaid overtime FLSA claim." *Id.* at *3. The court distinguished *Prickett* on the grounds that it involved only FLSA claims. *Id.* The *Bradford* case has not been cited by any other court on this point, nor did it cite any case for the proposition that a non-FLSA claim may not proceed in tandem with an FLSA claim. Moreover, in direct opposition to *Bradford*, the Sixth Circuit Court of Appeals held that a court may certify supple-

mental state law claims to proceed as part of a collective action pursuant to the FLSA because "supplemental claims by definition are treated as part of the same controversy animated by a particular employee's FLSA claim." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 580 (6th Cir. 2009). The supplemental claims in *O'Brien* involved Ohio's Prompt Pay Act. *Id.* at 577.

Based on the foregoing, Defendants' argument that there is no mechanism for FLSA opt-in plaintiffs to join in state law claims is misplaced. Indeed, the United States District Court for the Southern District of New York in *Ansoumana* expressly permitted the opt-in plaintiffs to join the state law claims because "they should have the same rights as the named Plaintiffs to have all their related claims adjudicated in the same forum." 201 F.R.D. at 90 Therefore, the issue is not whether the Moving Opt-In Plaintiffs may pursue both FLSA and NYLL claims in the same action, but rather whether in this case they have consented to pursuing state law claims. The consents signed by the Moving Opt-In Plaintiffs expressly state that they consent to be a plaintiff in "any Fair Labor Standards Act action of unpaid wages...." (Dkt. 18, 19, 20, and 23). The consents do not expressly reference an agreement to pursue claims under the NYLL. However, the consents state that the Moving Opt-In Plaintiffs "wish to preserve and pursue any claim that I may have to the greatest extent possible" and that they "expressly consent to the use of this consent form for purposes of making me a party plaintiff in any lawsuit and/or lawsuits that plaintiffs' attorneys have brought and/or may bring on behalf of myself and other employees alleged to be similarly situated." (*Id.*). This is broad language that would seem to encompass the state law claims brought in this lawsuit. As such, the Court finds that the Moving Opt-In Plaintiffs may seek redress in this lawsuit as to the NYLL claims.

Nonetheless, at this stage of the proceedings, the Court cannot grant relief to the Moving Opt-In Plaintiffs because there is a fundamental flaw with their partial summary judgment motion. In their moving papers, Plaintiffs do not provide any specific records or documents related to the Moving Opt-In Plaintiffs. Instead, they provide records for individuals identified as Employees 1 through 9. (*See* Dkt. 146-1 at ¶¶ 5-21). These employees are never identified by name and it is not even clear that they are the Moving Opt-In Plaintiffs. The Court simply cannot determine whether Defendants violated the NYLL as to the Moving Opt-In Plaintiffs when the record does not contain their pay stubs, does not contain any information about when and where they were employed, and does not contain any information about the positions in which they were employed.

By contrast, the record contains specific records related to Ms. Hicks and Ms. Raymond. (*See, e.g.*, Dkt. 176-7, 176-8, 176-9, 176-10). Therefore, the remainder of Part I of this Decision and Order considers only Ms. Hicks' and Ms. Raymond's claims.

## C. Tip Allowance/Tip Credit for Food Service Workers

■ Defendants make a second threshold argument—they argue that Plaintiffs' claims are barred as a matter of law because food service workers do not receive a tip allowance or credit. Instead, Defendants argue, NYLL § 652(4) establishes a completely separate lower minimum wage for food service workers.

According to Defendants' logic, since they paid Plaintiffs a wage at least equal to this alleged separate lower minimum wage, Plaintiffs' claims must fail. In sup-

port of this argument, Defendants cite the language of the statute and one case, *Cao v. Wu Liang Lexington Restaurant, Inc.*, No. 08 CIV. 3725(DC), 2010 WL 4159391 (S.D.N.Y. Sept. 30, 2010), which states in relevant part, "the Labor Law allows employers to pay tipped workers in the food service industry a lower minimum wage." *Id.* at *2.

Defendants' position is without merit. In fact, it is flatly contradicted by the statute, the regulations, and the relevant case law. With respect to the statute itself, NYLL § 652(4) states as follows:

Notwithstanding subdivisions one and two of this section, the wage for an employee who is a food service worker receiving tips shall be a cash wage of at least three dollars and thirty cents per hour on or after March thirty-first, two thousand; three dollars and eighty-five cents on or after January first, two thousand five; at least four dollars and thirty-five cents on or after January first, two thousand six; and at least four dollars and sixty cents on or after January first, two thousand seven, *provided that the tips of such an employee, when added to such cash wage, are equal to or exceed the minimum wage in effect* pursuant to subdivision one of this section and provided further that no other cash wage is established pursuant to section six hundred fifty-three of this article.

NYLL § 652(4) (emphasis added). That language makes it clear that the minimum wage that food service workers ultimately receive must be the same minimum wage that all workers receive. The only distinction with food service workers is that some of that minimum wage will be provided by the employer as a cash wage and some of it will be paid through tips provided by customers. If food service workers were truly subject to an entirely separate minimum wage, it would not make sense to require employers to make up pay in instances of insufficient tips.

The relevant regulations also contradict Defendants' argument. Prior to 2011, the regulations specifically referred to a "[t]ip allowance for food service worker[s]" and permitted a lower cash wage to be paid by the employer only when tips caused the employee to receive at least the same minimum wage paid to all workers. 12 N.Y.C.R.R. § 137–1.5 (repealed). Courts considering the issue plainly treated tipped employees as subject to the same minimum wage applicable to all workers, albeit with the benefit of a tip credit if the regulatory requirements were met. For example, in *Padilla v. Manlapaz*, 643 F.Supp.2d 302 (E.D.N.Y.2009), a waitress brought various claims against her former employer pursuant to the FLSA and the NYLL. With respect to the NYLL claims, the court stated:

New York state law allows employers to credit a portion of an employee's tips and the costs of meals as allowances against the minimum wage requirement when certain preconditions are met. N.Y. Lab. Law § 652(4); N.Y. Comp. Codes R. & Regs. tit. 12, § 137–1.5, 1.9. First, the employer is required to "furnish to each employee a statement with every payment of wages listing ... allowances ... claimed as part of the minimum wage...." N.Y. Comp.Codes R. & Regs. tit. 12, § 137–2.2. Second, the employer must "maintain and preserve for not less than six years weekly payroll records which shall show for each employee ... allowances ... claimed as part of the minimum wage...." N.Y. Comp.Codes R. & Regs. tit. 12, § 137–2.1. Defendants concede that they failed [to] comply with both requirements, and, therefore, they are not entitled to claim

either of the allowances for at least these reasons.

*Id.* at 309–310.

Similarly, in *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F.Supp.2d 253 (S.D.N.Y. 2011), the court held that a restaurant employer could not take a "tip credit" with regard to its waiters and deliverymen because it had failed to comply with the regulations. *Id.* at 290; *see also Lanzetta v. Florio's Enters., Inc.*, 763 F.Supp.2d 615, 623 (S.D.N.Y.2011) (because "[b]oth state and federal law impose certain notice requirements on employers that are 'strict' prerequisites to taking" a tip credit, restaurant employer that had failed to comply with notice requirements was not entitled to take tip credit as to waitress); *Mendez v. Pizza on Stone*, No. 11 Civ. 6316(DLC), 2012 WL 3133547, at *4 (S.D.N.Y. Aug. 1, 2012) (employer was not likely to prevail on defense that it complied with the statutory requirements necessary to take a tip credit as to dining room employees); *Monterossa v. Martinez Rest. Corp.*, No. 11 CIV. 3689(JMF), 2012 WL 3890212, at *4 (S.D.N.Y. Sept. 7, 2012) (restaurant employer could not take "tip credit" with respect to waitresses and general helpers due to failure to comply with regulations).

Defendants attempt to distinguish the cases discussed above as inapplicable here because the defendants in those cases had committed numerous violations of the NYLL. However, none of the distinctions Defendants draw are related to whether or not food service workers receive a tip credit or tip allowance against the prevailing minimum wage. Defendants have not cited a single case in which a court held that food service workers were subject to a completely different hourly minimum wage, as opposed to receiving a tip credit against the standard minimum wage. *Cao*, the sole case Defendants cite in support of

their argument, actually states the opposite:

> [T]he Labor Law allows employers to pay tipped workers in the food service industry a lower minimum wage. *See* N.Y. Lab. Law § 652(4). An employer may receive the benefit of *this tip credit* only if the employer provides "to each employee a statement with every payment of wages listing ... allowances ... claimed as part of the minimum wage" and "maintain[s] and preserve[s] for not less than six years weekly payroll records which shall show for each employee ... allowances ... claimed as part of the minimum wage...."

2010 WL 4159391, at *2 (quoting *Padilla*, 643 F.Supp.2d at 309–10) (emphasis added). *Cao* plainly supports the position that the NYLL permits employers to pay a lower wage to food service workers because those food service workers receive a tip credit against the standard minimum wage—not because there is a wholly separate minimum wage that applies to tipped employees.

With respect to the post-January 1, 2011 regulations, there is significant authority for the position that food service workers receive a tip credit. The Second Circuit Court of Appeals has expressly referred to waiters as receiving a "tip credit" under the revised regulations. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir.2011) ("Under New York Labor Law, as of January 1, 2011, however, employers are entitled to a tip credit of only $2.25."). The regulations themselves also expressly refer to "[t]ip credits for food service workers." 12 N.Y.C.R.R. § 146–1.3(b). Defendants include with their moving papers a Department of Labor poster they claim to have displayed in their restaurants that states that the "[m]aximum [t]ip [c]redit" for food service workers is $2.25. (Dkt. 176–10 at

9). Additionally, the document that Defendants had Ms. Raymond sign on January 1, 2011, states that it was "[r]evised 12/28/2010 for New York State *tip credit* minimum wage increase." (*Id.* at 13) (emphasis added). The stipulation entered into by the parties also stipulates that "[d]uring the relevant time period Plaintiffs had actual knowledge that Defendants were taking ... tip credits from the minimum wage for those employees working as a server, bartender, host and carside to go server...." (Dkt. 176–5 at ¶ 2).

Defendants identify one Department of Labor document that arguably draws a distinction between the minimum wage rate paid to food service workers and other tipped employees. In the *Report and Recommendation of the Minimum Wage Board to the Commissioner of Labor Pursuant to Labor Law Section 655 (Article 19, the Minimum Wage Act)* (Dkt. 191–2), one sentence asks, "[s]hould the Wage Orders be amended to clarify how overtime rates are calculated for (a) tipped employees whose employers receive a tip allowance, and (b) employees subject to the lower statutory rate set by Labor Law Section 652(4)?" (*Id.* at 4). Yet, in other places in the same document, the Minimum Wage Board defines a tip allowance as "when employees receive a lower hourly wage based on the receipt of tips" and discusses when an employer can "tak[e] a tip credit or tip allowance for any food service employees...." (*Id.* at 9–10). Thus, it does not appear that the single isolated sentence identified by Defendants contradicts the above-discussed authority.

Based on the foregoing, there is no basis for the Court to conclude that the NYLL establishes a separate "food service worker minimum wage." Rather, the relevant provisions permit employers to take a tip credit and pay a cash wage to food service workers that is lower than the minimum

wage so long as certain requirements are met. Defendants' threshold argument fails as a matter of law.

## D. Pay Statement Claims

 Turning to the merits of Plaintiffs' claims, Plaintiffs' first argument is that for the time period prior to January 1, 2011, Defendants failed to comply with the then-existing regulation requiring every hospitality industry employer (including restaurants) to "furnish to each employee a statement with every payment of wages listing hours worked, rates paid, gross wages, *allowances, if any, claimed as part of the minimum wage,* deductions and net wages." 12 N.Y.C.R.R. § 137–2.2 (repealed) (emphasis added). Plaintiffs further argue that Defendants failed to comply with the then-existing regulation requiring hospitality industry employers to maintain for six years records showing "allowances, if any, claimed as part of the minimum wage...." *See* 12 N.Y.C.R.R. § 137–2.1 (repealed).

Plaintiffs rely upon the cases discussed above (*Copantitla v. Fiskardo Estiatorio, Inc.,* 788 F.Supp.2d 253 (S.D.N.Y.2011); *Lanzetta v. Florio's Enters., Inc.,* 763 F.Supp.2d 615 (S.D.N.Y.2011); *Padilla v. Manlapaz,* 643 F.Supp.2d 302 (E.D.N.Y. 2009); *Mendez v. Pizza on Stone,* No. 11 Civ. 6316(DLC), 2012 WL 3133547 (S.D.N.Y. Aug. 1, 2012); *Monterossa v. Martinez Rest. Corp.,* No. 11 CIV. 3689(JMF), 2012 WL 3890212 (S.D.N.Y. Sept. 7, 2012); and *Cao v. Wu Liang Ye Lexington Rest., Inc.,* No. 08 Civ. 3725(DC), 2010 WL 4159391 (S.D.N.Y. Sept. 30, 2010)) in support of their position. In each of these cases, which involved violations of both the FLSA and the NYLL, the court held that an employer who failed to provide a pay statement listing the tip allowance and/or failed to retain

records of the tip allowance for six years [3] was not entitled to the tip allowance.

Plaintiffs correctly point out that there is no case denying an employee summary judgment when the facts establish that the employer failed to provide a wage statement setting forth the amount of the tip credit or failed to maintain the required records. Yet, there also is not one case that granted summary judgment under the circumstances present in this case. Based on the parties' stipulations for purposes of Plaintiffs' motion for partial summary judgment, there is no dispute that the employees received pay equal to the required minimum wage; each paycheck listed, among other things, the hours worked, rate of pay, tips earned, and tip makeup pay; the employees knew the amount of the tip credits taken against the minimum wage with each paycheck; and the employees were not confused about the manner in which the employer took the tip credit. (Dkt. 176–5).

Many of the relevant cases relied upon by Plaintiffs did not involve summary judgment motions. *Lanzetta* was decided after a bench trial and involved a plaintiff who had worked only for tips and whose employers had retained a portion of her tips. 763 F.Supp.2d at 617–621. *Mendez* involved a motion for class certification and a defendant who could not show it had provided notice of the tip credit. 2012 WL 3133547, at *4. The defendants in *Cao* defaulted, had not notified plaintiffs they were taking a tip credit, and had retained 12 to 15 percent of the waiters' tips. 2010 WL 4159391, at *1–2, *4.

The cases that were decided based on contested motions for summary judgment involved relevant facts not present here. *See Copantitla,* 788 F.Supp.2d at 271–73 (certain plaintiffs were paid as little as $2.00 per hour and defendant retained a portion of gratuities); *Padilla,* 643 F.Supp.2d at 306 (defendants never informed plaintiff they would be taking a tip allowance and plaintiff was unable to retain all her tips); *Monterossa,* 2012 WL 3890212, at *1 (defendant admitted that he never told his employees that they were earning less than the minimum wage because they were receiving tips from customers). In other words, the cases relied upon by Plaintiffs involving contested motions for summary judgment concerned other violations by the employers and, in each case, resulted in the employees being uninformed and/or underpaid.

Moreover, it is not clear that the information provided on Plaintiffs' paystubs failed to comply with the pre–2011 regulatory requirement of showing the "allowances" that were "claimed as part of the minimum wage." Defendants argue that they, in fact, complied with the pay statement requirements because they listed the wage rate as "reg-tipped," rendering it "fundamentally obvious" that an allowance was being taken, and because the relevant regulation did not require that the amount of the tip allowance be listed separately. Defendants further argue that "simple math" would have resulted in Plaintiffs knowing the exact amount of the tip allowance taken. Indeed, there is no dispute that each paystub listed, among other things, the tips earned and any "tip makeup pay," and Plaintiffs knew the amount of the tip credit taken against the minimum wage. (Dkt. 176–5 at 3–4; 176–6 at ¶ 7).

---

**3.** Plaintiffs make a cursory argument that Defendants failed to retain records of the tip allowance, but the record is not clear on that issue. Defendants have submitted compensation records for Ms. Hicks and Ms. Raymond going back as far as 2006. (Dkt. 176–7, 176–8). Plaintiffs have not met their burden of establishing that the compensation records maintained by Defendants failed to comply with the then-existing regulations.

Unlike the Wage Order discussed below that became effective January 1, 2011, the pre–2011 requirements are not nearly as precise in terms of the information that needed to be included in order to satisfy the requirement of showing "allowances" that were "claimed as part of the minimum wage." Indeed, the New York State Department of Labor has confirmed that one of the purposes of the Wage Order and changes enacted in 2011 was to "clarify and simplify various provisions of the [previous regulations]." *Notice to Employers Regarding Implementation of Wage Order—New York State Department of Labor—Minimum Wage Requirements for the Hospitality Industry,* available online at https://www.labor.ny.gov/worker protection/laborstandards/PDFs/Hospitality%20Wage%20Order/Hospitality_Wage_Order_Implementation.pdf (last accessed July 28, 2014); *see also Cuzco v. F & J Steaks 37th Street LLC,* No. 13cv1859 (PAC), 2014 WL 2210615, at *2 (S.D.N.Y. May 28, 2014) (setting forth the legislative history of the Wage Order and explaining that "a main purpose" of the statutory and regulatory changes in 2011 was to "clarify [the] existing regulations" and "provide clear and concise guidance to employers and employees" (quotation omitted)).

Having thoroughly reviewed the record and taking into account the stipulation entered into by the parties, the Court cannot determine, at this preliminary stage of the proceedings, that the information provided by Defendants on Ms. Hicks' and Ms. Raymond's pay statements failed to comply with the pre–2011 regulations. Plaintiffs' arguments rely heavily on an acknowledgement by Susan Sabio, Defendants' Director of Human Resources, that Defendants did not "furnish to employees a statement with every payment of wages showing the allowance [Defendants] were taking for the tip credit provision against

the minimum wage[.]" (Dkt. 146–2 at 100:5–13). Reviewing this statement in context, however, it appears that Ms. Sabio was distinguishing between what she understood to be allowances (meals, lodgings, etc.) and the tip credit allowance. It is not clear to the Court, at this early stage of discovery, that Ms. Sabio was stating that the pay statements at issue did not provide the requisite notice to the employees that Defendants were taking a credit for tips against the minimum wage.

In sum, Plaintiffs have not met their burden, at this stage of the litigation, of demonstrating through competent evidence that the requirements of the law pre–2011 were not met. As a result, they are not entitled to partial summary judgment on their pay statement claims related to the pre–2011 regulations.

However, summary judgment in favor of Defendants is also unwarranted. The Court is not persuaded by Defendants' argument that the simple act of designating the wage paid "reg-tipped" complies with the NYLL, and none of the relevant authority supports this position. Nor is it obvious from the face of the pay statements provided to the Court what "simple math" the Defendants claim Plaintiffs should have performed—the pay statements do not appear to have listed the standard minimum wage as a matter of course, and so a necessary element of the proposed mathematical equation appears to be missing.

*Hernandez v. BCI Coca–Cola Bottling Co.,* 554 Fed.Appx. 661 (9th Cir.2014), relied upon by Defendants, is distinguishable. In that case, which considered whether an employer had complied with the California Labor Code, the wage statements at issue provided every piece of information the plaintiff needed to determine how many overtime hours he had

worked and his rate of pay for those overtime hours. *Id.* at 662. The *Hernandez* court also cited with approval *McKenzie v. Federal Express Corp.,* 765 F.Supp.2d 1222 (C.D.Cal.2011), in which the court granted summary judgment to a plaintiff claiming violations of the California Labor Code because his wage statements did not list the beginning date for each pay period and he therefore would have had to refer to outside sources such as a calendar or a work schedule for verification. *Id.* at 1230. Moreover, in *Hernandez,* the court noted that California courts had expressly held that "[w]age statements comply with [the California Labor Code] when a plaintiff employee can ascertain the required information by performing simple math, *using figures on the face of the wage statement.*" 554 Fed.Appx. at 662 (emphasis added). Here, not only have Defendants failed to identify any comparable holding from a New York court or a federal court applying New York law, one of the key mathematical figures at issue (the standard minimum wage) does not appear to be listed on the face of the wage statement.

Defendants also claim that they are entitled to summary judgment because loss of the tip credit is not an available remedy for failure to comply with notice requirements. (Dkt. 178 at 21–22). Defendants argue that NYLL § 198 provides that the appropriate remedy for a pay statement violation is recovery of the underpayment of wages and that Plaintiffs were not underpaid. This is a circular argument without support in the law. By definition, if Defendants took a tip credit to which they were not entitled, they underpaid wages. Defendants' argument assumes that they are always entitled to count tips as part of the wages they paid Plaintiffs, but the case law simply does not support this conclusion. For example, in *Lanzetta,* the plaintiff "earned significant tip income waiting tables" (up to ten times the minimum

wage), yet because defendant did not comply with the regulations, it owed plaintiff the full standard minimum wage. 763 F.Supp.2d at 623–24; *see also Paz v. Piedra,* No. 09 Civ. 03977(LAK)(GWG), 2012 WL 121103, at *9 (S.D.N.Y. Jan. 12, 2012) ("Because defendants failed to inform plaintiffs and the class members of their intention to take a tip credit ... defendants were ineligible to avail themselves of the NYLL's tip credit provisions.").

The Court is cognizant that the requirements of the New York Minimum Wage Act are to be construed in favor of employees. *See Settlement Home Care, Inc. v. Indus. Bd. of Appeals of Dep't of Labor,* 151 A.D.2d 580, 581, 542 N.Y.S.2d 346 (2d Dep't 1989) ("The State Minimum Wage Act constitutes remedial legislation designed to relieve the financial hardship experienced by persons employed in occupations 'at wages insufficient to provide adequate maintenance for themselves and their families' (Labor Law § 650). As such, it is to be liberally construed so as to permit as many individuals as possible to take advantage of the benefits it offers. Conversely, exceptions to this remedial legislation are to be narrowly construed so as not to frustrate the legislative purpose underlying its enactment.") (citations omitted). Here, Defendants have not shown that their actions complied with the NYLL and its associated regulations by providing Plaintiffs with all the information to which they were entitled.

For the foregoing reasons, Plaintiffs' motion for partial summary judgment and Defendants' cross-motion for partial summary judgment are denied as to the pay statement claims. The record is insufficiently developed at this time to permit summary judgment in favor of either party.

### E. Wage Notice Claims

Plaintiffs also seek partial summary judgment on the basis that Defendants failed to comply with 12 N.Y.C.R.R. § 146–2.2. This regulation went into effect on January 1, 2011, and provides greater clarity than the pre–2011 regulations as to the precise information that should be disclosed to an employee. Section 146–2.2 provides, in relevant part, as follows:

(a) Prior to the start of employment, an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, *the amount of tip credit, if any, to be taken from the basic minimum hourly rate,* and the regular payday. *The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate* . . . .

(b) Such notice shall also be required prior to any change in the employee's hourly rates of pay.

12 N.Y.C.R.R. § 146–2.2 (emphasis added). This regulation is enforced by 12 N.Y.C.R.R. § 146–1.3, which provides: "An employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips and *if the employee has been notified of the tip credit as required in section 146–2.2 of this Part.*" 12 N.Y.C.R.R. § 146–1.3 (emphasis added).

In addition to the arguments discussed above, Defendants make two key arguments in opposition to Plaintiffs' motion for partial summary judgment with respect to the Wage Order. First, Defendants contend that neither Ms. Hicks nor Ms. Raymond was entitled to a wage notice under this section because they neither started employment nor received a change in their rates of pay after the effective date of the Wage Order. Defendants further argue that loss of the tip credit is not an appropriate remedy for a wage notice violation and that to the extent the regulations require this as a remedy, they are in conflict with the statute.

With respect to Defendants' first argument, it appears to be undisputed that Ms. Hicks ceased employment with Defendants prior to January 1, 2011. As such, Defendants are correct that she was not entitled to a wage notice under the Wage Order.

 As to Ms. Raymond, Defendants' argument lacks merit. Ms. Raymond's hourly wage was increased from $4.65 per hour to $5.00 per hour on January 1, 2011. (Dkt. 176–10 at 13). Pursuant to 12 N.Y.C.R.R. § 146–2.2(b), the tip credit disclosures set forth in the new regulations needed to be made to Ms. Raymond in the form of a written notice. Nonetheless, Defendants argue that Ms. Raymond's wages increased at the same time that the new regulations went into effect, and that the wage notice requirement therefore did not apply to this pay increase.

This argument is flawed because it misapprehends the manner in which the Minimum Wage Act and its associated regulations operate. The regulations requiring wage notices went into effect on January 1, 2011. As such, an employer who changed a wage on January 1, 2011, was required to provide a wage notice. Defendants' argument assumes that Ms. Raymond's wage changed simultaneously with the Wage Order becoming effective, because January 1, 2011, is also when the higher cash wage for food service workers took effect. This is not how the Minimum Wage Act operates. The Minimum Wage Act does not set any particular individual's wage; it simply tells employers what the floor is for such wages.

For example, Defendants would have been free to pay Ms. Raymond $6.00 per hour for tipped occupations as of January

1, 2011. This interpretation of the statute is confirmed by the fact that the Department of Labor gave employers a two-month grace period in which to implement the wage increases. *See Notice to Employers Regarding Implementation of Wage Order—New York State Department of Labor Minimum Wage Requirements for the Hospitality Industry,* available online at https://www.labor.ny.gov/worker protection/laborstandards/PDFs/ Hospitality% 20Wage% 20Order/Hospitality_Wage_Order_Implementation.pdf (last accessed July 28, 2014).

■ It is ultimately up to the employer to set wages, though the employer will be subject to liability if those wages are not in compliance with the Minimum Wage Act. As such, Ms. Raymond's pay increase did not happen automatically, by operation of law. Defendants were instead required to take affirmative steps to increase Ms. Raymond's wage, and the record indicates that these affirmative steps occurred on January 1, 2011, after the Wage Order became effective. (*See* Dkt. 176–8 at 25; Dkt. 176–10 at 13).

Furthermore, even if Ms. Raymond's pay was increased at the same time the Wage Order became effective, Defendants' argument still fails by virtue of the language in 12 N.Y.C.R.R. § 146–1.3. That regulation provides that an employer may take a tip credit towards the basic minimum hourly rate only if the employee has received the notice required by 12 N.Y.C.R.R. § 146–2.2. There is nothing in the regulations suggesting that existing employees were not equally entitled to notice prior to the employer taking a tip credit, and it is undisputed that Ms. Raymond did not receive a notice containing the information set forth in 12 N.Y.C.R.R. § 146–2.2. Therefore, regardless of whether Ms. Raymond's pay was increased at the same time the Wage Order became effective, Defendants could only take advantage of the tip credit by providing the required notice to Ms. Raymond.

At oral argument on this matter, Defendants also raised the issue that they were entitled to the affirmative defense set forth in NYLL § 198(1–b). This statute provides:

> In any action or administrative proceeding to recover damages for violation of paragraph (d) of subdivision one of section one hundred ninety-five of this article, it shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due pursuant to this article or article nineteen or article nineteen-A of this chapter to the employee who was not provided notice as required by subdivision one of section one hundred ninety-five of this article or (ii) the employer reasonably believed in good faith that it was not required to provide the employee with notice pursuant to subdivision one of section one hundred ninety-five of this article.

NYLL § 198(1–b). This affirmative defense is simply not applicable to Ms. Raymond's wage notice claim. By its own terms, the affirmative defense is limited to alleged violations of NYLL § 195(1)(d), which addresses errors or omissions in non-English language notices. Here, Plaintiffs do not assert a violation of NYLL § 195(1)(d), nor is it the provision of law that the relevant sections of the Wage Order seek to enforce. As such, the affirmative defense is not relevant to Ms. Raymond's wage notice claim.

Defendants also argue that the Wage Order's notice requirements are unenforceable because they are inconsistent with NYLL §§ 198 and 652(4). These arguments have been discussed above and are without merit. First, as to § 652(4), the plain language of the statute makes it clear that food service workers are entitled

to the standard minimum wage unless the employer is entitled to claim credit for some portion thereof in tips. Second, as to § 198, again, Defendants assume that Plaintiffs were not "entitled" to the standard minimum wage because they received tips.' The plain language of § 198 does not lead to this conclusion, as it makes no mention of tips and does not set forth the circumstances under which a credit may be claimed.

Put simply, the Department of Labor's Wage Order setting forth the conditions pursuant to which an employer is entitled to claim a tip credit does not conflict with either § 652(4) or § 198. The Department of Labor's interpretation of the statutes it is charged with enforcing is entitled to deference by this Court. Indeed, the New York Court of Appeals recently confirmed that the Wage Order is entitled to deference. *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 471, 972 N.Y.S.2d 191, 995 N.E.2d 153 (2013) (upholding Department of Labor's interpretation of NYLL § 196–d as codified by the Wage Order). The Wage Order is not "irrational or unreasonable," *see id.*, and the Court will therefore enforce its terms. *See Paz*, 2012 WL 121103, at *9 (enforcing the notice provisions of the Wage Order).

The record plainly shows that Defendants did not provide Ms. Raymond with a compliant wage notice on January 1, 2011. Although Defendants did provide a notice to Ms. Raymond on or about January 1, 2011, that notice did not state that her employer intended to take a tip credit, the amount of the tip credit to be taken from the basic minimum hourly rate, or that she was entitled to makeup pay if she did not earn enough in tips to bring her rate of pay up the basic minimum hourly rate. (Dkt. 176–10 at 13). No reasonable jury could conclude that this wage notice complied with the Wage Order.

Defendants argue that the Court should reject Plaintiffs' claims pursuant to the legal maxim *de minimis non curat lex*— "the law does not care for trifles." It is true that the doctrine of *de minimis non curat lex* "is part of the established background of legal principles against which all enactments are adopted...." *Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 231, 112 S.Ct. 2447, 120 L.Ed.2d 174 (1992). However, Defendants' disregard of the Wage Order is not properly deemed a trifle. Certainly New York State does not consider failure to provide employees with proper wage notices a trifle, in that NYLL § 198(1–b) allows for damages of up to $2,500 for failure to provide the same.

As a result, Defendants' cross-motion for partial summary judgment on the wage notice claim is denied and Plaintiffs' motion for partial summary judgment on the wage notice claim is granted as to Ms. Raymond against her former employer, TLC West, LLC. Plaintiffs have not demonstrated, at this stage of the proceedings, that the relationship between the other Defendants and TLC West, LLC justifies an entry of judgment as to any other Defendant.

With respect to damages, Defendants were not entitled to take a tip credit and they are therefore liable to Ms. Raymond for paying her less than the standard minimum wage. However, the record is not clear as to the amount of damages that Ms. Raymond should be awarded, and the Court is not able to readily calculate that amount based upon the record before it at this time. Further submissions will be necessary in order for damages to be calculated. Ms. Raymond will be entitled to pre-judgment interest at the rate of 9% on any damages pursuant to N.Y.C.P.L.R. §§ 5001 and 5004. As discussed below, Defendants are not entitled to a set off for

the tips received by Ms. Raymond, but it would be premature to award liquidated damages.

### F. Set Off for Tips Actually Received

■ In addition to their merits-based arguments, Defendants also argue that even if they violated the NYLL, they are not liable for damages because Defendants should be credited for the full amount of tips actually received by Plaintiffs, which met or exceeded the applicable minimum wage. In support of this position, Defendants cite a single decision of the New York State Industrial Board of Appeals (Dkt. 176–2 at 48) (the "Tip Top Decision") in which a Department of Labor Investigator "credited" an employer who had failed to pay minimum wage with the tips that the employees conceded they had received.

Plaintiffs argue that the Tip Top Decision is not persuasive authority because it was not decided in the restaurant context, was decided under the pre-January 1, 2011, regulations, does not even describe what "credited" means in this context, and, even accepting Defendants' characterization, is contrary to well-established case law holding that a defendant who does not comply with the regulations may not receive any credit towards the minimum wage for tips. Plaintiffs further point out that accepting Defendants' position as to this point would mean that they could have paid their employees nothing, and they would not be liable so long as the tips received exceeded $7.25 per hour.

The Court is unpersuaded by Defendants' position. The purpose of the regulatory scheme is to set forth the conditions pursuant to which an employer may count tips as part of wages. Accepting Defendants' argument would effectively undermine this regulatory goal. The cases previously discussed hold that where an employer fails to follow the regulations,

it may not receive credit for tips. In particular, in *Lanzetta*, it was undisputed that the plaintiff "earned significant tip income waiting tables," and the defendant took the position that plaintiff had actually received "more than the minimum wage ten times over." 763 F.Supp.2d at 623. Nevertheless, the *Lanzetta* court held that the plaintiff was entitled to recover the regular minimum wage rate. *Id.* at 623–24. As such, Defendants are not entitled to a set-off for tips actually received by Ms. Raymond.

### G. Liquidated Damages

■ Plaintiffs request liquidated damages pursuant to the NYLL because Defendants allegedly did not have a "good faith basis" for their actions. (Dkt. 145 at 14) (citing NYLL § 198(1–a)). Plaintiffs claim that their deposition of Defendants' Director of Human Resources, Susan Sabio, revealed that Defendants were knowingly non-compliant with the law and deliberately ignored their counsel's warnings as to the information they needed to supply to their employees.

The Court finds Plaintiffs' request premature. Very limited discovery has occurred in this case. The Court has reviewed Ms. Sabio's deposition transcript, and it does not, in the Court's opinion, conclusively establish that Defendants were not acting in good faith. Moreover, state of mind determinations are generally not appropriate for the Court to make. *See Light v. W2001 Metro. Hotel Realty LLC*, No. 10 Civ. 4449(SAS), 2011 WL 2175778, at *4 (S.D.N.Y. June 2, 2011) ("[D]etermination of a defendant's state of mind is generally a question for the jury. . . .").

## II. Class Certification Motion

On January 27, 2014, Plaintiffs filed a motion for class certification pursuant to

Fed.R.Civ.P. 23, arguing that the class should be certified because Plaintiffs meet the requirements of Fed.R.Civ.P. 23. (Dkt. 143). Defendants oppose Plaintiffs' motion on the grounds that the named Plaintiffs are inadequate class representatives and that Plaintiffs' state law claims are neither common nor typical of the putative class. (Dkt. 177 at 13–22). Defendants also argue that Plaintiffs have proposed impermissible fail-safe classes, and that Plaintiffs' proposed class notice is premature. (Id. at 22–24). Plaintiffs submitted a reply on April 3, 2014. (Dkt. 192).

Because Plaintiffs have met the requirements of Fed.R.Civ.P. 23, the Court grants Plaintiffs' motion for class certification. The Court directs the parties to work in good faith to agree on any necessary revisions to the Court's proposed subclasses or, if an agreement cannot be reached, to submit any proposed changes to the Court's proposed redefinition within twenty (20) days of entry of this Decision and Order. Furthermore, Plaintiffs and Defendants are directed to confer in good faith and submit a joint letter to the Court proposing a single form of notice for the Rule 23 class within twenty (20) days of entry of this Decision and Order.

## A. The Fed.R.Civ.P. 23(a) Requirements for Class Certification

The requirements for class certification pursuant to Fed.R.Civ.P. 23 include:

(1) Numerosity: "the class is so numerous that joinder of all members is impracticable;"

(2) Commonality: "there are questions of law or fact common to the class;"

(3) Typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and

(4) Adequacy: "the representative parties will fairly and adequately protect the interests of the class."

See Fed.R.Civ.P. 23(a). District courts may certify a case as a class action whenever the proposed class meets the requirements of Rule 23(a) and also meets the requirements of Rule 23(b)(1), (b)(2), or (b)(3). In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 133 (2d Cir.2001), overruled on other grounds by In re Initial Pub. Offerings Sec. Litig, 471 F.3d 24, 42 (2d Cir.2006). Plaintiffs contend that the Court may certify the class under either subsection (b)(1)(A), (b)(3), or (c)(4). (Dkt. 143–1 at 12–16).

District Courts customarily retain "broad discretion" on the issue of class certification. Enea v. Bloomberg, L.P., No. 12 Civ. 4656(GBD)(FM), 2014 WL 1044027, at *2 (S.D.N.Y. Mar. 17, 2014). Furthermore, "[i]n deciding certification, courts must take a liberal rather than a restrictive approach in determining whether the plaintiff satisfies [the] requirements [of class certification]...." Steinberg v. Nationwide Mut. Ins. Co., 224 F.R.D. 67, 72 (E.D.N.Y.2004). "A district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit." In re Initial Pub. Offerings Sec. Litig., 471 F.3d at 42. "It is understood that this Rule 23 inquiry may overlap with the merits of the underlying claims. When this occurs, courts are to consider the merits questions only to the extent they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Gordon v. Kaleida Health, 299 F.R.D. 380, 399 (W.D.N.Y. 2014) (internal quotations and citations omitted).

■ "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir.2010). The Court considers each of the four requirements of class certification in turn.

### 1. The Numerosity Requirement

■ The numerosity requirement is satisfied if the class is sufficiently numerous that joinder is "impracticable." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993). The Second Circuit has held that "numerosity is presumed at a level of 40 members...." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995).

Plaintiffs contend that "[t]he proposed *Hicks* class is estimated to include a total of more than 2,500 tipped employees." (Dkt. 143–2 at ¶ 4). Defendants do not contest that Plaintiffs meet the numerosity requirement. A class of more than 2,500 plaintiffs vastly exceeds the requirement of the 40–member threshold. Accordingly, Plaintiffs satisfy the numerosity requirement.

### 2. The Commonality and Typicality Requirements

#### a. Commonality

■ Plaintiffs also have established commonality. Commonality occurs where the "class members' claims share a common question of law or fact," *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 158 (E.D.N.Y.2009), and "the disputed issue of law or fact occupies essentially the same degree of centrality to the named [p]laintiffs' claim as to that of other members of the proposed class." *Dodge v. Cnty. of Orange*, 208 F.R.D. 79, 88 (S.D.N.Y.2002) (quotation and citation omitted). "Where 'injuries derive from a unitary course of conduct by a single system,' a district court is within its discretion in finding commonality." *Cohen*, 262 F.R.D. at 158 (citing *Marisol A., by Forbes v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997)). For purposes of establishing commonality, a single common question is sufficient. *In re Cablevision Consumer Litig.*, No. 10–CV–4992(JS)(AKT), 2014 WL 1330546, at *6 (E.D.N.Y. Mar. 31, 2014).

■ Plaintiffs identify four common questions of law and fact:

(1) Defendants applied the same compensation policies to all the class members;

(2) Defendants paid each class member substantially less than the minimum wage;

(3) Defendants issued the same written notices to the class members; and

(4) The notices were sent in a purported attempt to comply with the exact same statutes and regulations that are at issue in the litigation.

(Dkt. 143–1 at 8–9). In her deposition, Susan Sabio, the Director of Human Resources at T.L. Cannon, confirmed that T.L. Cannon's pay policies of ensuring that employees are paid at the appropriate rate "apply at all stores" and that the same wage notice was issued to "every associate." (Dkt. 143–3 at 39:10–15, 56:10–23). With regard to common questions of law, all of Plaintiffs' claims arise under the same statutes and regulations, including 12 N.Y.C.R.R. § 137–2.2 (repealed), and 12 N.Y.C.R.R. §§ 146–1.3 and 146–2.2. (Dkt. 82).

Courts have found the commonality requirement satisfied in cases similar to the instant case. Plaintiffs highlight *Shahriar v. Smith & Wollensky Rest. Grp. Inc.*, 659 F.3d 234 (2d Cir.2011), which is on point. (Dkt. 143–1 at 7–8). In *Shahriar*, the Second Circuit Court of Appeals held that

the district court correctly found commonality satisfied where "the Plaintiffs' NYLL class claims all derive from the same compensation policies and tipping practices of [defendant]" and "all of the class plaintiffs' claims arise under the same New York State statutes and regulations." *Id.* at 252; *see also Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 124 (S.D.N.Y.2014) (commonality satisfied where all plaintiffs suffered under the same allegedly illegal tip policies of their employer); *In re Cablevision Consumer Litig.*, 2014 WL 1330546, at *8 (commonality established where all class members were linked by a standard form contract that defendant allegedly breached); *Oakley v. Verizon Communs., Inc.*, No. 09 Civ. 9175(CM), 2012 WL 335657, at *14 (S.D.N.Y. Feb. 1, 2012) (noting that when a group of plaintiffs suffer under a uniform policy, the commonality test is often satisfied).

Plaintiffs have demonstrated that "[t]he harm that the named Plaintiffs have allegedly suffered in this case is the same harm suffered by each class member." *Schear*, 297 F.R.D. at 124. Additionally, Plaintiffs' claims depend upon the common contention that Defendants allegedly provided all class members with deficient wage and tip notices. "This contention is 'capable of classwide resolution' as its 'truth or falsity will resolve [the] issue . . . in one stroke.'" *Id.* (quoting *Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)) (alteration in original). Defendants do not contest that Plaintiffs were subject to the same wage policies. Therefore, Plaintiffs have satisfied the commonality requirement.

#### b. Typicality

■■■ The proposed named Plaintiffs also are typical of the class members. "The typicality requirement ensures that 'maintenance of a class action is economical and [that] the named plaintiff's claim

and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence.'" *Cohen*, 262 F.R.D. at 158 (quoting *Marisol*, 126 F.3d at 376) (alteration in original). When plaintiffs assert "that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality." *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y.2002) (quotation omitted).

■■■ A determination that Defendants failed to properly provide the appropriate notice would result in all Plaintiffs obtaining the same relief. Again, the *Shahriar* case is on point. In that case, typicality was satisfied where the district court "recognized that if certain individuals who are tip-eligible employees are found to have been included inappropriately in the tip pool, such a determination would affect every plaintiff and 'would result in everybody else getting something more.'" *Shahriar*, 659 F.3d at 252; *see also Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y.2010) (commonality and typicality satisfied where all class members were subject to the same policies regarding their employers' distribution of a service charge); *Schear*, 297 F.R.D. at 124–25 (typicality satisfied where defendants failed to properly distribute tips in accordance with the NYLL, all members of the class were tipped front of the house employees, and all class members were allegedly denied gratuities that they were entitled to receive).

Here, Plaintiffs challenge Defendants' failure to issue appropriate notice as required by the tip credit requirements of the NYLL. A determination that notice was not properly provided would affect the entire class. The named plaintiffs, Ms. Hicks and Ms. Raymond, allegedly have been injured by Defendants' pay policies

and seek the same relief as each class member. Accordingly, Plaintiffs have satisfied the typicality requirement.

Defendants do not raise any procedural argument as to why the class does not satisfy the commonality and typicality requirements of class certification. However, they do raise the same substantive argument contained in their motion for summary judgment, that the named Plaintiffs do not meet the commonality and typicality requirements because they were not entitled to receive a written wage notice. (Dkt. 177 at 22).

■ As discussed at Part I(E) of this Decision and Order, Plaintiff Hicks was not subject to the notice requirements of the Wage Order because she was no longer employed by Defendants on January 1, 2011. Therefore, she is an inadequate representative with regard to the wage notice claim. Nonetheless, Plaintiff Raymond was subject to the wage notice requirements, as she was employed prior to January 1, 2011, when the wage notice regulation took effect, and remained employed after that date. On January 1, 2011, Ms. Raymond received a pay raise from $4.65 per hour to $5.00 per hour (Dkt. 176–10 at 13) and, therefore, was entitled to a proper wage notice. The proposed class has one named Plaintiff who is common and typical of the class, and it may be certified. *See Cent. States Se. and Sw. Areas Health and Welfare Fund v. Merck–Medco Managed Care, LLC,* 504 F.3d 229, 241 (2d Cir.2007) ("[W]e note that only one of the named Plaintiffs is required to establish standing in order to seek relief on behalf of the entire class.").

■ In any event, "what is relevant to a determination of class certification is the claim of each putative class, not misconstructions thereof by those sought to be charged by the class claims," and certification is "an issue which should be treated apart from ... the merits of claims." *Irving Trust Co. v. Nationwide Leisure Corp.,* 95 F.R.D. 51, 62 (S.D.N.Y.1982). Defendants' claim that Plaintiffs were not subject to the notice requirement is a substantive issue that is appropriate for this Court to consider on summary judgment, "but it is no grounds for denying certification...." *Id.* Accordingly, Plaintiffs have satisfied the typicality requirement.

### 3. The Adequacy Requirement

■ The proposed named Plaintiffs also satisfy the adequacy requirement. The adequacy requirement has two elements: "(1) the representative plaintiff's attorneys must be qualified, experienced, and generally able to conduct the litigation, and (2) the plaintiff's interests must not be antagonistic to those of the remainder of the class." *Cohen,* 262 F.R.D. at 158.

■ With regard to the qualifications of Plaintiffs' attorney, Thomas & Solomon LLP is qualified to litigate this case. In support of Thomas & Solomon's qualifications, Plaintiffs submit the affirmation of Justin M. Cordello, a former Thomas & Solomon attorney who was working on this case at the time the class certification motion was filed. (Dkt. 143–2). Mr. Cordello's affirmation highlights the qualifications of Thomas & Solomon with regard to its ability to serve as class counsel in employment actions, including its experience in the employment law field, wage and hour litigation, and class action litigation. (*Id.* at ¶¶ 8–10). Other courts have found Thomas & Solomon to be adequate class counsel for employment-related claims. *See Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 182 (W.D.N.Y.2005) (Thomas & Solomon "has demonstrated that it is well-qualified to conduct the litigation.").

■ Furthermore, it does not appear that Plaintiffs' interests are antagonistic to the remainder of the class. Plaintiffs' affirmation states that they are not aware of any conflict of interest between the interests of the class members and the named Plaintiffs that would prevent them from serving as adequate class representatives. (Dkt. 143–2 at ¶ 5). Additionally, Plaintiffs' counsel and this Court are unaware of any pending actions alleging the same or similar causes of action against Defendants that would prejudice this action; specifically, pending actions alleging tip violations against Defendants commenced by members of the class that would frustrate or prejudice this action. (*Id.* at ¶¶ 6–7). *See Frank,* 228 F.R.D. at 182 (adequacy found where "[c]ounsel has further indicated that it is unaware of any conflicts of interest or other pending actions alleging similar causes of action. Nor is this Court aware of any potential conflicts between or among any class members."). Additionally, Plaintiffs note that the similarity of the class members' claims here will ensure that a conflict of interest will not arise. *See Hamelin v. Faxton–St. Luke's Healthcare,* 274 F.R.D. 385, 396 (N.D.N.Y.2011) (adequacy satisfied where "[t]he affidavits of the named plaintiffs exhibit sufficient knowledge concerning the class claims and no class members have interests antagonistic to one another. All proposed members of the class share a common interest in establishing that defendants violated NYLL.").

Defendants assert that the named Plaintiffs are inadequate class representatives because they lack standing to bring their pay stub and wage notice claims. (Dkt. 177 at 13–20). Specifically, Defendants contend that Plaintiffs were never entitled to a written wage notice and therefore suffered no injury, and also that Plaintiffs suffered no injury with regard to their pay stub claim.

As discussed above at Part I(E) of this Decision and Order, Defendants' argument that Plaintiffs were not entitled to a written wage notice, as applied to Ms. Raymond, is without merit. With regard to Defendants' argument that Plaintiffs did not sustain an injury as a result of their pay stub claim, as discussed in Parts I(D) and (F) of this Decision and Order, Plaintiffs may have sustained an injury as a result of Defendants' alleged failure to provide them with a proper pay stub. Accordingly, Plaintiffs have satisfied the adequacy requirement.

### 4. The "Implied" Requirement of Ascertainability

■ Although not explicitly required by Rule 23(a), "courts have required that 'a class be identifiable before it may be properly certified.'" *Schear,* 297 F.R.D. at 125 (quoting *Hamelin,* 274 F.R.D. at 396). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson v. City of New York,* 282 F.R.D. 360, 367 (S.D.N.Y.2012) (citation omitted). In *Schear,* the court found that the class was ascertainable because it was "easily identifiable from Defendants' records: all of the tip eligible employees who worked at [defendants' restaurant] throughout the class period." 297 F.R.D. at 125. Here, because Defendants' allegedly illegal wage and tipping practices applied to all tipped employees, the class is identifiable for the same reasons. Indeed, Plaintiffs have established the size of the proposed class to be more than 2,500 employees. (Dkt. 143–2 at ¶ 4). Accordingly, Plaintiffs' proposed class meets the ascertainability requirement.

### B. The Class Certification Requirements of Rule 23(b)(3)

Plaintiffs argue that certification is appropriate under Fed.R.Civ.P. 23(b)(1)(A),

23(b)(3), and 23(c)(4). (Dkt. 143–1 at 12–16). Because the Court finds that certification of the class is appropriate under Fed.R.Civ.P. 23(b)(3), it need not address the issue of whether the class may be certified pursuant to Fed.R.Civ.P. 23(b)(1)(A) or 23(c)(4).

■■■■■■ Fed.R.Civ.P. 23(b)(3) permits certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R.Civ.P. 23(b). "The predominance requirement 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Hamelin*, 274 F.R.D. at 397 (quoting *Myers*, 624 F.3d at 547). Common questions predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir.2002). Courts determine whether Rule 23(b)(3) certification is appropriate by considering:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3).

■■■■ "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 139; *see also Ramos v. SimplexGrinnell LP*, 796 F.Supp.2d 346, 359 (E.D.N.Y.2011) ("numerous courts have found that wage claims are especially suited to class litigation … despite differences in hours worked, wages paid, and wages due."); *Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y.2007) (wage claims are "the most perfect questions for class treatment."). Here, Plaintiffs' tip credit claims predominate over individual issues because they applied to all servers, regardless of their pay rate.

Courts have found that the predominance requirement was met in similar cases where plaintiffs challenged a defendant's alleged illegal tipping policies. For example, in *Shahriar*, the Second Circuit Court of Appeals found that Rule 23(b)'s requirements, as applied to the plaintiffs' challenge to illegal tip policies, were satisfied because the tip credit claims predominated over the individual issues. 659 F.3d at 253 ("[Defendant] has not denied that all servers were subject to its uniform tip practices, and Plaintiffs support the allegation that all class plaintiffs were subject to the same uniform tip practices…."). Furthermore, in *Megason v. Starjem Rest. Corp.*, No. 12 Civ. 1299(NRB), 2014 WL 113711 (S.D.N.Y. Jan. 13, 2014), the court determined that plaintiffs satisfied the requisite commonality and predominance for their tip allotment claims. *Id.* at *7. Finally, in *Schear*, the court found that plaintiffs, who were subject to defendants' allegedly illegal tip policies, met the predominance requirement of Fed.R.Civ.P. 23(b)(3). 297 F.R.D. at 126.

Plaintiffs also have made the requisite showing that a class action is the superior

method of adjudicating this case. "Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants." *Id.*

Plaintiffs argue that the superiority requirement is satisfied, and Defendants do not contest Plaintiffs' assertions. First, Plaintiffs state that, given the small amount of each class member's recovery, it would not make sense for each Plaintiff to expend the resources to bring separate claims. (Dkt. 143–1 at 15). Plaintiffs also state that no other litigation has been commenced by members of the class against Defendants concerning the tip credit, and supply an affirmation in support of this assertion. (Dkt. 143–2 at ¶¶ 5–7). *See Hamelin,* 274 F.R.D. at 398 ("the costs of maintaining separate actions would be prohibitive for potential class members and obtaining individual counsel may be difficult because of the relatively low individual damages." Additionally, "[n]either party has advised of any pending litigation concerning the subject matter of the proposed class action."). Finally, Plaintiffs state that this forum has the capacity to handle this litigation and that, given the common issues, the action will be manageable. (Dkt. 143–1 at 15).

Accordingly, Plaintiffs' proposed class meets the predominance and superiority requirements, and it is hereby certified under Fed.R.Civ.P. 23(b)(3).

### C. Plaintiffs' Proposed Subclasses

Defendants argue that Plaintiffs have proposed impermissible fail-safe classes. (Dkt. 177 at 22–24). Specifically, Defendants note that Plaintiffs have divided the proposed class into two subclasses:

Subclass A: All current and former tipped employees who worked for Applebee's from September 2006 to December 31, 2010 who were not provided wage statements listing allowances claimed by Applebee's as required by 12 N.Y.C.R.R. §§ 137–2.2 (repealed).

Subclass B: All current and former tipped employees working for Applebee's after January 1, 2011 (but excluding those who were hired after June 2013) who were not provided wage notices that included the tip credit as required by 12 N.Y.C.R.R. §§ 146–1.3; 146–2.2.

(Dkt. 143–1 at 2–3). Defendants argue that membership in Plaintiffs' subclasses is dependent upon not having been provided with a compliant pay stub or wage notice; therefore, if it is ultimately determined that the pay stubs and wage notices complied with the applicable regulations, none of the employees will be eligible class members, "and Defendants will be deprived of the benefit of the putative class members being bound by this favorable judgment." (Dkt. 177 at 23).

Plaintiffs argue that Defendants' fail-safe class argument places "form over substance" as there is no dispute that the proposed class includes employees who allegedly received deficient tip credit disclosures, and that the issue is whether the notices are sufficient to comply with the law. (Dkt. 192 at 9–10). Therefore, "[i]f the Court determines that these notices [provided by Defendant] are sufficient and do comply with the law, the class members will be bound by that judgment." (*Id.* at 10).

 "A fail-safe class is one whose definition 'shields the putative class members from receiving an adverse judgment....'" *Mazzei v. Money Store,* 288 F.R.D. 45, 55 (S.D.N.Y.2012) (quoting *Randleman v. Fidelity Nat'l Title Ins. Co.,*

646 F.3d 347, 352 (6th Cir.2011)). "In a fail-safe class, either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment. A proposed 'fail-safe' class should not be certified because it is unfair to defendants, it prevents an adverse judgment being entered against plaintiffs, and it is unmanageable because the members of the class could only be known after a determination of liability." *Id.* (internal citations omitted); *see also Rodriguez v. Countrywide Home Loans, Inc.,* 695 F.3d 360, 369 (5th Cir.2012) ("A fail-safe class is a class whose membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability.").

■ A finding of a fail-safe class does not result in a bar to certification of the class. "Despite a fail-safe class definition, courts have the discretion 'to construe the complaint or redefine the class to bring it within the scope of Rule 23 . . . .' " *Mazzei,* 288 F.R.D. at 55 (quoting *Cokely v. N.Y. Convention Ctr. Operating Corp.,* No. 00 Civ. 4637(CBM), 2004 WL 1152531, at *2 n. 3 (S.D.N.Y. May 21, 2004)). *See also* 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1759 (3d ed.2005) ("if plaintiff's definition of the class is found to be unacceptable, the court may construe the complaint or redefine the class to bring it within the scope of Rule 23 or it may allow plaintiff to amend in order to limit the class.").

The *Mazzei* decision provides an example of a fail-safe class. In *Mazzei,* the class was defined as "[a]ll similarly situated borrowers who signed form loan mortgage agreements . . . on loans which were owned or serviced by [the defendants] and who from March 1, 2000 to the present ("Class Period") were charged the following fees *that were not permitted under the [form loan agreements]."* 288 F.R.D. at 55 (emphasis added) (alteration in original). The court found that "[d]efining the class to include only those who were charged fees 'that were not permitted' results in a fail-safe class" because "[t]he merits of [the plaintiff's] claim depend[ed] on whether the fees 'were not permitted,' " and therefore, "if the trier of fact decided that any or all of the fees were permitted under the form loan agreements, there would immediately be no members of the class for those fees." *Id.*

The Court largely agrees with Plaintiffs' contention that Defendants are placing form over substance by arguing that the proposed subclasses are fail-safe classes. Nevertheless, the proposed subclasses arguably have some fail-safe qualities, and if the Court were to find in favor of Defendants with respect to some of the arguments they have advanced, there is a slight risk there could be no members in the proposed subclasses. This slight risk does not justify denial of Plaintiffs' motion for class certification; rather, the Court will redefine the proposed subclasses to eliminate any potential fail-safe issues.

■ "[C]ourts have the discretion 'to construe the complaint or redefine the class to bring it within the scope of Rule 23 . . . .' " *Mazzei,* 288 F.R.D. at 55 (citation omitted); *see also Washington v. Walker,* 734 F.2d 1237, 1240 (7th Cir.1984) (noting that "[t]he district court's order of class certification was conditioned on the plaintiffs' redefining the class."). Indeed, "the fail-safe problem is more of an art than a science . . . . and often should be solved by refining the class definition rather than flatly denying class certification on that basis." *Messner v. Northshore Univ. HealthSys.,* 669 F.3d 802, 825 (7th Cir. 2012). Here, the Court proposes that the subclasses be revised as follows:

Subclass A: All current and former tipped employees who worked for Applebee's from September 2006 to December 31, 2010.

Subclass B: All current and former tipped employees working for Applebee's after January 1, 2011 (but excluding those who were hired after June 2013).

The Court's proposed revision is based on the testimony of Ms. Sabio that T.L. Cannon has uniform policies regarding tip-credit notification and payment of minimum wage that apply to all employees at all locations. (Dkt. 146–2 at 37:3–20, 39:10–21). The Court is mindful that there may be additional facts bearing on this proposed redefinition that are not currently in the record. The Court therefore directs the parties to work in good faith to agree on any necessary revisions to the Court's proposed subclasses or, if an agreement cannot be reached, to submit any proposed changes to the Court's proposed redefinition within twenty (20) days of entry of this Decision and Order.

### D. Submission of a Joint Letter to the Court Proposing a Single Form Notice

Defendants request that, if the Court is inclined to grant class certification, the Court not approve Plaintiffs' proposed notice and instead allow "as is customary, the parties to confer and submit a jointly acceptable form of notice or permit further briefing by Defendants on this issue." (Dkt. 177 at 24). Courts routinely direct parties to confer and submit a jointly-acceptable form of notice in class actions. *Ravenell v. Avis Budget Car Rental, LLC*, No. 08–CV–2113(SLT)(ALC), 2010 WL 2921508, at *6 (E.D.N.Y. July 19, 2010); *see also Guan Ming Lin v. Benihana N.Y. Corp.*, No. 10 Civ. 1335(RA)(JCF), 2013 WL 829098, at *1 n. 1 (S.D.N.Y. Feb. 27, 2013) (report and recommendation direct-

ing the parties to confer and submit joint or separate proposed notices); *Rosario v. Valentine Ave. Disc. Store, Co.*, No. 10 CV 5255(ERK)(LB), 2013 WL 2395288, at *10 (E.D.N.Y. May 31, 2013) ("The parties shall submit a joint proposed notice pursuant to Fed.R.Civ.P. 23(c)(2)(B)...."); *Frederick v. Dreiser Loop Supermkt. Corp.*, No. 06 Civ. 15341(AKH), 2008 WL 4724721, at *2 (S.D.N.Y. Oct. 24, 2008) ("The parties shall submit a joint letter to the Court within ten days proposing a single form of notice for both the FLSA collective action and the Rule 23 class action....").

Plaintiffs contend that the notice they submitted is in compliance with FJC Model Notices and is appropriate. (Dkt. 192 at 10–11). While that may be the case, defendants often are afforded the opportunity to participate in the notice-drafting process. Accordingly, Plaintiffs and Defendants are directed to confer in good faith and submit a joint letter to the Court proposing a single form of notice for the Rule 23 class within twenty (20) days of entry of this Decision and Order.

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is granted in part and denied in part. Plaintiffs' motion is granted as to Ms. Raymond's wage notice claim against TLC West, LLC, only, and denied in all other respects. Defendants' cross-motion for partial summary judgment is denied. Plaintiffs' motion to certify the class pursuant to Fed.R.Civ.P. 23 is granted. The Court directs the parties to work in good faith to agree on any necessary revisions to the Court's proposed subclasses or, if an agreement cannot be reached, to submit any proposed changes to the Court's proposed redefinition outlining each parties' respective positions within twenty (20)

days of entry of this Decision and Order. Additionally, the parties are directed to confer in good faith and submit a joint letter to the Court proposing a single form of notice for the Rule 23 class within twenty (20) days of entry of this Decision and Order.

SO ORDERED.